pg. 10A, the plaintiff complained that on October 15, 2008, prison personnel "intercepted" the legal documents his paid attorney [Harold D Register Jr. of Lafayette, La.] had instructed him (plaintiff) to provide to him through his (plaintiff) family members, who were at the prison that day, for approximately 45 minutes before actually transferring them to his family member.

In his complaint, the plaintiff conceded that it was unknown what may have been removed from the legal denvelope... prior to his sister receiving the documents but, when he attempted to have the legal documents returned to him, upon information and belief, the prison officials told his sister that if she would not take them with her, they (prison official) would get rid of them.

Subsequently, the "Memorandum of Law" in support of his § 2254 petition

Complaint, rec doc no. 1    11/2/2012    Page 67 of 131

which the plaintiff personally mailed to the federal district court on April 1, 2008, was [conspicuously] missing as part of Exhibit A in globe in support of the COA motion filed with the U. S. Fifth Circuit Court of Appeal by attorney Harold Register on October 30, 2008. On April 3, 2009, the third anniversary date of the plaintiff being administered a liver-biopsy at the state-ran Earl K Long Hospital (EKL) at Baton Rouge, to determine the damage to his liver caused by the liver-destroying virus hepatitis C, the plaintiff was in recient (sic) of the March 19, 2009 (sic) Judgment issued as the mandate from the U. S. Fifth Circuit [HIGGINBOTHAM, J] denying him a certificatie of appealability (COA motion) [rec doc 24] to appeal the district court's June 16, 2008 Judgment dismissing his first (and only) federal habeas petition as "untimely" filed, [rec doc 10] (via

Complaint, rec doc no. 1    11/2/2012    Page 68 of 131

attorney Harold Register)
It is evident that screening process of the plaintiff's [Emergency] ARP request (no 2009-0119) submitted to defendant Warden Cain's Office on January 9, 2009, unreasonably lasted (lingered) over two years before he was sent the Notice of Rejection (dated Feb. 11, 2011), which he received on February 21, 2011, Indeed, substantially restrained the plaintiff from an opportunity to seek a remedy. See LAC 22:1.325 (F)(1). That is, to timely inform his attorney - and/or the court that the plaintiff's "Memorandum of Law" in support of his § 2254 petition was missing from the "Exh. A in globo" in support of his COA motion filed by Register on October 30, 2008; compare Jeanlouis y La. Dept. of Public Safety & Corrs., no C566943, filed in the 19th JDC on May 14, 2008

On that date, October 15, 2008 (em-

phasis added], then-medical director, Dr Ramon Singh, instead of the treating physician Dr William 'Bill' Cassidy as ordered by the court on May 30, 2008, filed as Exhibit B in compliance with the court's order, in connection with a suit for judicial review filed in the 19th JDC on July 20, 2007 under docket no CS57,390-0, A [misleading] narrative chronology and statement addressing the medical treatment that the plaintiff had recieved and the plaintiff's complaint in particular that on November 29, 2008, prison medical staff at EHCC abruptly [discontinued] his life-saving Hepatitis C Treatment as retaliation for him availing [himself] of the ARP process on November 21, 2006, only five weeks into an 11-month Treatment plan. See Jeanlouis v La, Dept of Pub, Safety & Corss, No CS57,390-0 (19th JDC April 13, 2009); Jeanlouis v Stalder, 2010 WL 1170113 (La.

App 1 Cir 3/26/2010)

122. At the same time of the plaintiff submitting the "May 25, 2012 'Motion For Suspension of Briefing De- lay and Sanctions" to the 19th JDC in case no. C601,099-25. On May 30, 2012, the plaintiff filed with the Louisiana Supreme Court ("LSC"), an "Application For Rehearing" dated May 25, 2012, in connection with the LSC's action on May 18, 2012 in case no 2011-KH-2020 from the criminal case no. 10 1100-KH of the docket of the Court of Appeal, Third Circuit, Lake Charles, Louisiana from review of case no 66602 of the docket of the 15th Judicial District Court For the Parish of LaFayette, State of Louisiana, the Honorable Kristain Dennis Earles, Judge Presid- ing, CF the Advocate, "CDC to baby boomers; Get tested for hepa-

Complaint, ree doc no. 1    11/2/2012    Page 71 of 131

titis C" Saturday, May 19, 2012, pg 3A ( for the first time the government (CDC) on Friday, May 18, 2012, is proposing that all baby boomers ( anyone born from 1945 to 1965 ) should get a one-time blood test for hepatitis C). See e.g. Claim "1 of Application for Post-123. Conviction Relief ( dated April 23, 2010) at pp. 4-10, " Jeanlouis's lengthy history of "alcohol / illicit drug use" may have led to his medical condition of (chronic) hepatitis C virus, which in turn, led to Jeanlouis' s chronic amphetamine psychosis, a disorder manifested through hallucination and ongoing parania that prevented Jeanlouis from obeying the law and appreciating the wrongfulness of his action."

123. On that same day, May 30, 2012, the plaintiff received from the LSC, the May 25, 2012 Judgment denying Writs

Application in connection with its case no 2011-KH-2134 from the criminal case no. 10 1100-KH of the docket of the Court of Appeal, Third Circuit from review of case no. 66602 of the docket of the 15th Judicial District Court at Lafayette, La..

124. On June 5, 2012 at 4:56 p.m., the plaintiff's "May 25, 2012 Motion for Suspension of Briefing Delay and Sanction" in connection with case no. C601,099-25 of the docket of the 19th JDC, see statements by reference made in paragraphs 120 and 121, pp 66-71, was filed in the office of the 19th Judicial District Court at Baton Rouge, La.

125. The next day, on June 6, 2012, the plaintiff filed an "Application for Rehearing" (dated June 1, 2012) with the LSC in connection with the action of the court on May 25, 2012 in

Complaint, rec doc no. 1    11/2/2012   Page 73 of 131

the above-mentioned case no. 2011-KH-2134, denying Writs Application.

126. On that same date (June 6, 2012), a Wednesday, the plaintiff was taken to the prison hospital by corrections officer Booth of A-team, where the plaintiff for the first time, met with the out-of prison specialist, Dr. Lee, a chiroprator, to began a weekly meeting (session) of physical therapy for his back and leg injuries.

127. It is here a conspiracy to effect in any way the plaintiff's equality of protection by the law or his equality of privileges and immunities under the law.

128. The next day on June 7, 2012, at about 8 p.m., the plaintiff was in receipt of the monthly "Lockdown review board sheet", which was

Complaint, rec doc no. 1    11/2/2012    Page 74 of 131

signed by both defendants Ray Vittorio and Platen Gooden, on June 5, 2012,

129. After injuring public record, i.e lockdown review board sheet, by way of drawing a line through "since last review, e.g. ~~Since Last Review~~, defendants Vittorio and Gooden denied the plaintiff release from his status of "maximum security/extended lockdown" after (doctorring) the document to reflect that the plaintiff was not release from that status is because the plaintiff received a serious rule violation since last review in May.

130. The following morning, on June 8, 2012, after bring the above ~~describe~~ described event to the attention of defendant Vittorio's, to no avail, later on that day (June 8, 2012), the plaintiff met with defendant Jane

Doe (Nurse-Practitioner) at Camp C (out camp) Clinic. At that meeting with the defendant, she inquired about the plaintiff's session with Dr Lee, the chiropractor. In reply, the plaintiff stated that he was a lil sore in the back-area, as Dr Lee anticipated.

131. Upon returning to the Unit (Jaguar 1 Right) from seeing defendant Jane Doe, corrections officer Bolden, who was in charge of running the Unit, was unable to get the keys th the shackles (used to fasten a prisoner's ankles together) loosen and unlock the the shackles. After summoning his supervisors supervisors (including defendant Daniel Davis), the shackles had to be cut off of the plaintiff's ankles with a cutting devise. Soon after, the plaintiff was seen by the EMT, as protocal.

Complaint, rec doc no. 1   11/2/2012   Page 76 of 131

132. On the following Monday, June 11, 2012, the plaintiff received from the 19th JDC, a billing statement in the amount of $539.20 in the civil case no C601, 099-25 of the docket of the 19th JDC with the stamp-marked, "PAST DUE)," on the billing invoice.

133. On Wednesday, June 13, 2012, upon B-team returning to work, the plaintiff was taken to the prison hospital by defendant Lt. Cleveland Connon, to met with Dr Lee, the chiropractor, for his weekly physical therapy.

134. After returning to the Unit from seeing Dr Lee, (again) Sergeant Bolden had to summon his supervisor to cut the shackles off the plaintiffs ankle with a bolt-cutter. Giving the appearance as if the plaintiff was tampering with the shackles.

Complaint, rec doc no. 1    11/2/2012    Page 77 of 131

135. On the next day, June 14, 2012, without advance notice, the plaintiff was (again) to be taken to the prison hospital.

136. Soon after, defendant Lt Cannon came to the housing Unit [Jaguar 1 Right] where the plaintiff was assigned to take him to the prison hospital, as he [Cannon] did the day before.

137. Similar to the day before, defendant Cannon placed the plaintiff in the patrol van (along with other inmates), and proceeded to retrieve inmates assigned to the Working Cell block Unit [Tiger (3 and 4) Unit] to be transported to the prison hospital in the [Same] patrol van with inmates assigned to Disciplinary Detention / Extended Lockdown, contrary to prison written rules and regulations concerning the security and orderly running of the institution, and safety of inmates.

138. Notwithstanding the patrol van's doors

Complaint, rec doc no. 1    11/2/2012    Page 78 of 131

were opened and the (music) radio playing, after waiting in the patrol van in the (soaring) heat for approximately 15 minutes, the plaintiff stepped out the patrol van in effect to lessen the pain in his lower-back and legs.

139. In response to seeing the plaintiff out of the patrol van, Defendant Cannon, standing some 200 feet away from the van, began walking towards the plaintiff. Upon the plaintiff entering the walkway, while still fully-restraint in handcuffs, shackles and a waist-chain, defendant Cannon -- in the presence of myraid unrestrained inmates -- bodily threw and propelled the plaintiff into the Administrative Segregation Building [Tiger(1 and 2) Unit] so that the plaintiff's face and head were caused to hit upon the side of the building.

140. Once inside the Adm. Seg. Building, defendant Cannon (again) bodily propelled

Complaint, rec doc no 1   11/2/2012   Page 79 of 131

the plaintiff into the wall adjacent to the shower on Tiger 1 Right cells on one side of a hallway). The plaintiff was then placed in the shower on Tiger 1 Right (Adm. Seg).

#41. Only minutes after the above described assault defendants A.W.s Tim Delaney, Joe Lamartmere and Colonel Ray Vittorio made rounds on Tiger 1 Right tier, while the plaintiff was standing in the shower fully-restraint. The above-named defendants was placed on notice of the abusive conduct of defendant Cannon and his (Cannon) creating an escape hazard and a substantial risk to inmates' safety (including the plaintiff's), while leaving [unattended] inmates (including the plaintiff) assigned to Jaguar (1 and 2) Unit in a patrol van out of his sight and waiting approx. 15 minutes for other inmates assigned to the working Cellblock to be taken to the prison hospital in the [very] same patrol van. Plaintiff also placed on notice the need for him to attend his call-out,

Complaint, rec doc no 1    11/2/2012    Page 80 of 131

142. Shortly after defendants Delaney, Lamartiniere and Vittorio exit the building, defendant LaShawanda Richardson, who was assigned to [Tiger (1 and 2) Unit], came to the shower where the plaintiff was speaking to another (fellow) inmate about the above-described assault from defendant Cannon, and threaten the plaintiff that she would have "those people" come spray him down, if the plaintiff did not stop talking about the above-described assault he endured from defendant Cannon.

143. Short after, defendant Cannon came to the shower where the plaintiff was being held. On pretext of taking the plaintiff on his hospital call-out, and without warning, defendant Cannon said, "You called for me?", and defendant Cannon sprayed chemical irritant upon the plaintiff, resulting in the plaintiff -- while fully-restraint -- tripping over the built-in platform in the shower shower, so that

Complaint, rec doc no 1   11/2/2012   Page 81 of 131

the plaintiff's head hit upon the floor of
the shower, thus, causing to suffer severe
headaches and burning in the skin and
his eyes from the being maced by defendant
Cannon. In addition, to aggravating on
(already) injured back and leg,

144. During the above-described (repeated)
assault and battery by defendant Cannon,
defendants Richardson and Woods, who was
also assigned to Tiger (1 and 2) Unit, re-
mained outside the cell (shower) the plaintiff
was being held and did not intervene.

145. During these events the plaintiff did
not resist or threaten the officers in any
fashion or break any prison rules.

146. The Emergency Response Team came
to the Unit as protocol. The EMTs re-
fused to list the plaintiff's medical complaint
on the 'Request for Medical Treatment form
or give the plaintiff a copy of the receipt.

Complaint, rec doc no' 1    11/2/2012    Page 82 of 131

147. Short after, defendant Daniel Davis made round at [Tiger (1 and 2) Unit], where the plaintiff placed Davis on notice of the [conspiracy] of defendants Cannon, Richardson and Woods, but he failed to take disciplinary actions against them, instead Davis threaten to spray the plaintiff again.

148 After Davis had been placed on notice of the assault and battery, the plaintiff ask Davis to be allow to shower and get a change of clothing, but he refused.

149. Inmates will generally experience itshing, irratation or discomfort for period of time from its use, but washing with water will generally alleviate any discomfort, the procedure prescribed following the use of mace is to have the inmate shower, have his eyes rissed out and change his clothing. This usually gives immediate relief of any discomfort. It wasn't until shift

Complaint, rec doc no. 1     11/2/2012     Page 83 of 131

change, and the above-named defendants went home, that the plaintiff was able to shower at about 8 p.m, some eleven (11) hours later.

150. On that same date (June 14, 2012), Lafayette Police Chief Jim Craft during a news conference called the actions of a group of current and former Lafayette police officers suit suing the city and the department "little more than a baseless and purposeful attempt to dishonor" the department and the officers who serve within it.

On that Thursday morning morning, the chief offered his response to allegation contained within a federal lawsuit filed by a group of nine current and former officers. The lawsuit includes allegations of police corruption, racial discrimination, payroll fraud, the manipulation of crime statistics and harassment, Craft said.

Craft said the officers involved secretly recorded conversations between some of their fellow officers and some

Complaint, rec doc no 1    11/2/2012    Page 84 of 131

of those taped conversations were played on a local TV station.

151, Prior to June 14, 2012, the (same) Lafayette City Police Department arrested the plaintiff on one court of first degree murder, which he was subsequently indicted by a Lafayette Parish Grand Jury on one count of second degree murder. While out of jail on bail, the (same) Lafayette City Police Department [conspired] with two brother-policemen, who works with the Breaux Bridge Police Department and a rookie State Trooper, Dirk Bergeron, and secretly recorded conversation between the plaintiff and Trooper Bergeron. The tape contained a recording of a so-called DWF traffic stop in the adjacent St. Martin Parish, which the plaintiff allegedly made incriminating statement admitting to killing an unnamed woman in Lafayette. The tape was admitted into evidence -- after the then-trial judge Byron Hebert absenced himself from the bench at the Motion to Suppress the Tape during a defense

Complaint, rec doc no 1     11/2/2012     Page 85 of 131

witness's testimony Clint Aubrey, a black officer with the BBPD -- and used at the plaintiff's jury trial to convict him, on February 5-7, 1996.

152. The allegations against the department first surfaced May 22, when five officers filed a temporary restraining order in state District Court seeking to stop the department from conducting an internal affairs investigation into a 'leaked confidential document. That day (May 22, 2012) the plaintiff received from the Louisiana Supreme Court the May 18, 2012 Judgment denying him Writs in criminal docket case number 2011-KH-2028   See statements by reference made in paragraph number 122, pp 71-72.

The lawsuit alleged, among other things that the investigation unfairly targeted the officers and violated portions of the Policeman's Bill of Rights. See The Advocate "Chief calls lawsuit 'baseless', Friday, June 15, 2012, pg 2.B.

153. On Tuesday, May 29, 2012, 15th Judicial

Complaint, rec doc no 1     11/2/2012   Page 86 of 131

District Judge Kristain Earles dismissed the temporary restraining order without comment, the same day the May 25, 2012 Judgment in case number 2011-KH-2134 of the criminal docket of the Louisiana Supreme Court denying the plaintiff's Writs was received on Angola grounds See statements by reference made in paragraph number 123, pp 72-73.

In response the officers joined with four other current and former officers in the federal lawsuit. The Advocate, "Judge dismisses restraining order," Wednesday, May 30, 2012, pp 3B.

154. Also on that date (June 14, 2012) de-fiant Houston, Texas investing investment promoter R Allen Stanford was sentenced to 110 years in prison after biking being convicted of biking investors out of more than $7 billion through a Ponzi scheme he operated for more than two decades. Approximatedly 1,000 residents of the Baton Rouge, Lafayette and Covington areas lost as much as $1 billion to Stanford's

Complaint, rec doc no 1    11/2/2012    Page 87 of 131

companies, according to estamates by state Rep. Bodi White R Central, and Baton Rouge attorney Phillip W. Preis,

The Security and Exchange Commission concluded last year that Stanford investors such should be covered by Securityes Investor Protection Corp. Funds, but SIPC officials refused to reognize the debt.

The dispute now resides with a Federal court in Washington, DC as on this date.

In Washington, U.S. Representive Bill Cassidy, R - Baton Rouge (AKA Dr Bill Cassidy), released a statement in support of SIPC payments to Stanford victims, The Advocate "110 years for Stanford," Friday, June 15, 2012, front page.

155. In addition, on June 14, 2012, a physician, Dr. Jo A Francis, 67 of Natchez, Miss, who wrote fake prescriptions that help defraud Medicare of more than $5 million lost her medical linense, after pleading guitly to two count of conspirasy to commit health-care fraud. She was also ordered for Baton Rouge Federal court

Complaint, ree doc no 1    11/2/2012    Page 88 of 131

to repay the insurer $1.6 million.

She appeared in a wheelchair before U S District Court Judge James Brady and apologized for her crimes. The Advocate, "Doctor's plea deal ends case of fraud," friday, June 15, 2012, pg 4B.

156. The next day, June 15, 2012, the plaintiff made sick-call request declaring himself an emergency seek medical attention for the injury injuries he sustained in the assault and battery committed against him, due to the Emergency Response Team the day before refusal to chart the plaintiff's injuries.. On that day, the EMT prescribed eye wash for the plaintiff.

157. On June 18, 2012, the date the plaintiff was scheduled, by court order on March 6, 2012, to appear in the 15ᵗʰ Judicial District Courthouse for the results of a paternity test, the plaintiff was brought before a disciplinary board, where defendant Vittorio Recused

Complaint, rec doc no 1     11/2/2012     Page 89 of 131

himself, sua sponte, as Board Chairman, on the basis that he witnessed the plaintiff in Tiger 1 Right shower complaining to defendant Delaney prior to the attack upon him, and to be fair to the plaintiff he (Nitterios) would not conduct the hearing himself.

158. Prior to that hearing, the plaintiff did not know that he was issued 3 disciplinary reports against him by defendant Lannon, Richardson and Davis, alleging the plaintiff violated disciplinary rules prohibiting cursing employees and refusing to obey employees' direct verbal orders, when he was being escorted to the prison hospital that day,

159. On Wednesday, June 20, 2012, the plaintiff was taken to the prison infirmary (hospital) for his weekly therapy with Dr Lee, where the plaintiff communicated to the chiropractor that he (plaintiff) believe that prison personnel are trying to sabotage his physical therapy, as his life-saving hepatitis

Complaint, rec doc no. 1    11/2/2012    Page 90 of 131

[ treatment plan in November of 2006, after only five weeks into an 11-month Treatment Plan. The plaintiff also communicated to Dr Lee that his injuries were a late-manifested injuries sustained in a hate-crime committed against him by prison officers (including an Assistant Warden) at Camp J Management Program on June 3, 2010 DBA BLSP-2010-0394-W

160. On June 25, 2012, the plaintiff received a disciplinary hearing before defendant Tim Delaney, eleven (11) calendar days after the date of the 3 disciplinary reports.

161. Defendant Delaney failed to call witness any witnesses requested by the plaintiff or among other things, administer a polygraph test (lie detector) to the parties involved (including the plaintiff) and to investigate the matter.

162, After the hearing, the plaintiff

Complaint, rec doc no 1    11/2/2012    Page 91 of 131

without a given written reason for his disposition signed by defendant Delaney, stated, "Guilty as charged (based on no evidence) and sentenced the plaintiff to a quarter change from Camp C Jaguar 1 Right to Camp J Mag. Management Program and loss of 8 weeks canteen and yard privileges.

163. After the hearing and placed (re-manded) to Adm. Seg., awaiting transfer to Camp J, later on that date (June 25, 2012), the plaintiff was taken to Camp C Clinic where he met with defendant Jane Doe, the Nurse Practitioner, for the injuries the plaintiff stated at the sick-call request of June 15, 2012 in connection with the battery. That date is the last day the plaintiff met with defendant Jane Doe as of the date of this Complaint.

164. Three days later, on June 28, 2012, the plaintiff, who is coping with health-related disabilities (Section 504 and ADA),

Complaint, see doc no 1.    11/2/2012    Page 92 of 131

including mental illness, was exigently taken and placed in the Camp J Management Program, the day the U.S. Supreme Court in Washington D.C., ruled that a provision of President Obama's landmark health-care law [The Affordable Care Act] concerning those in jail is constitutional Ice National Federation of Independant Business v Sebelius, 11-393 (6/28/2012). cf The Advocate "Group petition for assess of Angola," Tuesday, August 21, 2012, yy, frontpage (The Advocacy Center on August 17, 2012 filed a suit in Baton Rouge Federal Court against prison officials at Angola noting that some death row inmates have health-related disabilities including mental illness, heart problems, lung disease and diabetes and reported that death row temperature have exceeded 100 degrees)

165. Camp J has three maximum security levels. Level 1 is the lowest level and has the least items and privileges.

Complaint; rec doc no1    11/2/2012   Page 93 of 131

A inmate evaluation process has been established in Camp J for purpose of screening the inmates to determine the appropriate level for each inmate. The evaluation is done by a Camp J Management Committee ("Committee"), which consist of Mental Health Representative, a Security Representative (Captain or higher), a Classification Representative (Classification Specialist II or higher), and the Duty Warden. All inmates in Level I are evaluated every thirty days and the inmates at the other level are evaluated every ninety days.

166. Camp J is the most restricted area (housing area) at Angola, with little to no access to fan, and among other things, proper ventalation.

167. Pursuant to prison procedure, the plaintiff filed an administrative appeal with defendant Warden Cain, pointing out (among other things) that the disciplinary report issued by defendant Daniel Davis was/is

Complaint, rec doc no 1     11/2/2012     Page 94 of 131

fabricated [injured public record] being that defendant Davis was not the corrections officer who used chemical irritant upon the plaintiff, instead, defendant Cannon was the person, who conspired with defendants Richardson and Woods, used the chemical irritant to upon the plaintiff.

168 On July 11, 2012, a Commissioner from the 19th JDC, Rachel P Morgan, signed an Order denying the plaintiff's "May 25, 2012" Motion for Suspension of Briefing "Delay and Sanction" in case number C601, 049-25 of its civil docket, stating that "the ARP record filed April 4, 2012 Petitioner assert no prejudice in minor delay." See statements by reference made in paragraphs number 120 and 121, pp 65-71

169. However, the plaintiff was not in receipt of the above-mentioned July 11, 2012 Order deny his "May 25, 2012 Motion" until August 8, 2012, four weeks (28 days) later, after the U.S.

Complaint, rec doc no 1    11/2/2012    Page 95 of 131

Fifth Circuit Court of Appeals [ HIGGINBOTHAM, DAVIS, and ELROD, Circuit Judge ], in a per curiam order rendered on July 16, 2012 denying the plaintiff's "Petition For Panel Rehearing" from the court's [ DAVIS, CJ ] action of April 27, 2012 denying his COA motion in case no 30760 in its criminal docket. See Statements made by reference in paragraph numbers 80-97, pp 41-48 and paragraph numbers 115-119, pp 58-64.

And the Louisiana Supreme Court denying the plaintiff's "June 1, 2012 Motion For Rehearing" in case number 2011-KH-2134 of the LSC criminal docket file, see Statements made by reference in paragraph numbers 123-153, pp 72-87, on July 27, 2012. A July 27, 2012 Judgment --- one year anneversary date of defendant Leblanc denying ARP # DWCC-2011-0407 (dated May 17, 2011 -- received on the grounds of Angola on July 30, 2012.

170. On July 30, 2012, the day Angola re- ceived the July 27, 2012 Judgment from the Louisiana Supreme Court, the Baton Rouge Newspaper ran an article authored by the

Complaint, res doc no 1    11/2/2012    Page 96 of 131

a writer for the "Associated Press entitled, "Majority of La. prison doctors disciplined in past," Monday, July 30, 2012 frontpage; stating that nearly two-thirds (about 60%) of the doctors working in Louisiana's prison have been disciplined by the state medical board for issues ranging from pedophillia to substance abuse, according to data from the Louisiana State Board of Medical Examiners.

Dr. Randy Lavespere, the assistant medical director here at LSP at Angola, spent two years behind bars for purchasing $8,000 worth of crystal meth from an informant at a Home Depot parking lot, the article reported. His medical license was reinstated in October 2009 on the condition that he practice in an "institutional" prison or other structured setting."

According to the author, the LSP at Angola, is a common destination for troubled physicians, One former New Orleans physician accused of "unprofessional conduct" with female patients now practices at the all-male facility,

Complaint, rec doc no. 1    11/2/2012    Page 97 of 131

171. On that same day (July 30, 2012), Assistant Attorney General Thomas Perez, of the U.S. Department of Justice's Civil Rights Division filed a memo in Federal Court siding with Bernette J. Johnson over the argument by Justice Jeffery P. Victory that he may be the longest-turned justice next in line to be the chief justice of the Louisiana Supreme Court when Chief Justice Catherine "Kitty" ~~Kimal~~ Kimball retires next year. Johnson, who would become the first African-American chief justice in Louisiana, is suing to assert her status as the longest-serving member of the state Supreme Court. The Advocate, "Federal agency joins chief justice debate," Tuesday, July 31, 2012, pg 7A.

172. On July 27, 2012, the day the LSC denied the plaintiff's June 1, 2012 motion for Rehearing" in case number 2011-KH-2134 of its criminal docket file, A Georgia attorney, Richard B Cheathan, of Atlanta, told U.S District Judge Robert L. Wilkins in a court filing that

Complaint, ret doc no 1    11/2/2012    Page 98 of 131

the SEC agreed to false stipulations in the commission's suit against the SIPC. The congressionally created and industry-funded insurer refused an SEC order last year to cover as much as $500,000 of each investor's losses in the United States.    Cheatham contends the SEC did not properly represent him and other victims of convicted swindler Robert Allen Stanford in Louisiana and other states in a courtroom dispute over securities industry-funded insurance.    See statement made by reference[1] in paragraphs number 135 - 156, pp 78 - 89    he objected to Wilkins siding with SIPC attorneys July 3 that, although investors placed their money with SIPC member Stanford Grop Co., insurance coverage was negative when the cash was earmarked for non-member Stanford International Bank.

Cheatham is asking Wilkins to suspend his July 3 ruling so that he can represent himself in the dispute over SIPC insurance coverage.    The request comes at a time when members of Louisiana's congressional

Complaint, see doc no. 1     11/2/2012    Page 99 of 131

delegation and those other states are pressuring the JEC to appeal for reversal of Wilkin's decision.

U.S. Senators David Vitter, R-La., and Mary Landrieu, D-La,, and 12 other senate signed a letter that was delivered Friday (July 27) to SEC Chairwoman Mary Schapiro.

A similar letter was delivered to Schapiro from 35 member of the House, including U.S. Reps. Bill Cassidy, R-Baton Rouge; Charles Boustany Jr., R-Lafayette; Jeff Landry, R-New Iberia; Steve Scalise, R-Jefferson; John Fleming, R-Quitman, Minden, and Rodney Alexander, R-Quitman.  The Advocate, "Stanford investor appeals on basis of false SEC claim, Saturday, July 28, 2012, front page.

The SEC has until the first week of September to make a decision on a possible appeal.

173, In addition, on July 27, 2012, The (Baton Rouge) Advocate published an article authored by Mark J. Smith and Richardo Alonso-Zaldivar of the A.P. entitled, "Feds, insurers up

effort to find, fight health-care fraud," pg 4A, reporting that at a White House event with major insurers and the Obama administration held on Thursday, July 26, HHS Secretary Kathleen Sebeius said they will come together to takle a common problem by sharing raw data and investigative know-how on a scale not previously seen to try to shut off billions of dollars in questionable payment from to scam artists constantly poking the system for week weakness. in the health care system like Medicare and Medicaid.

174. On August 9, 2012, the day after the plaintiff received the July 11, 2012 Order signed by Commissioner Morgan denying his May 25, 2012 Motion for Suspention of Briefing Delay and Sanction in case number C601, 049-25 of the civil docket of the 19th JDC, the plaintiff filed a (seperate) "Motion for Suspension of Briefing Delay dated August 7, 2012" in connection the 19th JDC in connection with a seperate suit for judicial review (BS 15:1172) bearing docket number CGO4, 199-

Complaint, res doc no 1    11/2/2012    Page 101 of 131

25, due to the unrelentless soaring heat of 100 degress all through the day and night at Camp J Management Program and the effect the heat had on him as a person coping with advence Stage 3 hepatitis C virus and (among other things) the inmate counsel substilute's denying him (plaintiff) access to case law (legal research).

175. On that date (Aug. 9) both the USA TSOAM and The Advocate newspaper ran articles entitled "Broken record - the heat go on" frontpage," and " " July set record as hottest month ever recorded in U.S", pg "7A", respectively.

176. On that date (Aug 9, 2012) the plaintiff's administrative appeal to the Warden Office submitted on July 3, 2012 from the Disciplinary Board Action of June 25, 2012 in connection with the 3 disciplinary report issued to the plaintiff on June 14, 2012 was received at the legal program/Disciplinary Appeals. Office and assigned the appeal number LSP-2012-0349-W, a notice received by plaintiff on or about August 13, 2012.

Complaint, rec doc no. 1     11/2/2012   Page 102 of 131

177. On August 13, 2012, Gov. Bobby Jindal's waded into the controversial debate just prior to the 5 p.m. Monday deadline with his law team arguing the case is out of the Federal court's jurisdiction. U. S. District Court Judge Susie Morgan in New Orleans set an expedited hearing for 10.a.m. Thursday (Aug 16) on Jindal's motion to dismiss the case from Federal court, Ante at paragraph number 170 and 170, pp 96 - 98,

176. Jindal refused interview request Tuesday (Aug 14), but his office did email a prepared statement. The governor flew to Iowa on Tuesday to campaign for Republican presidential hopeful Mitt Romney.

"After consulting with the courts and as stated in the pleading's filed (Monday), it is important that this Louisiana - specific constitutional question be decided by Louisiana courts" Jindal stated. "As for who should be the next Chief Justice, that is a matter for the court to decide."

The Jindal filings came after a

Complaint, rec doc no. 1    11/2/2012    Page 103 of 131

Aug. 6 decision by Federal judge Susie Morgan to deny the Louisiana Supreme Court's motion to intervene.

The debate is whether Johnson's first six years from 1994 to 2000 on the Supreme Court should count toward her tenure when she was assigned to the court as an appellate judge because of the Federal civil-rights ruling, known as the "Chisom consent decree.

That judgment was the result of litigation dating back to 1986 that the Supreme Court districts were made to dilute and weaken the votes of minorities, especially in New Orleans. As such Gov. Jindal now w Replaces former Gov. Edwin W Edwards as a defendant.

After Jindal filing came late Monday, the NAACP Legal Defense Fund and attorneys for the original 1986 plaintiffs, including former New Orleans Mayor Marc Morial, quickly responded with opposition filings arguing that it is a cut-and-dried case of Johnson having the most seniority. New Orleans attorney

Complaint, rec doc no. 1    11/2/2012    Page 104 of 131

Ronald L. Wilson also filed a response to Jindal's intervention on behalf of the original plaintiffs. "The Advocate," "Jindal: Chief justice issue a state case," Wednesday, August 15, 2012, pg 7A.

179. The next day August 14, 2012, the 19th JDC sent to the plaintiff the Commissioner's Report made by Comm. Morgan on August 8, 2012 in connection to case no C601,099-25 of the 19th JDC and civil docket, related to the January 9, 2009 Emergency ARP # LSP-2009-0119, complaining that on October 16, 2008 prison personal may have removed some of the legal documents he (plaintiff) wanted to give to his family to provide to a lawyer to file his CVA motion to the US Fifth Circuit before the October 30, 2008 deadline. The plaintiff complained that prison personnel (including defendant Platen Gooden) "intercepted" the documents for approx. 45 minutes, before actually transferring the documents to his family member, who was present at the prison, which defendant Cain Rejected on February 11, 2011 as "untimely", some

Complaint, rec doc no. 1     11/2/2012     Page 105 of 131

sixteen (16) months later.   A Notice of Reject-
ion received by the plaintiff on February 21, 2012.
See statements made by reference in paragraph
numbers 120 and 121, pp 65 - 71

180  On that date (Aug 14) the above-mention
Commissioner's Report made by Comm. Morgan
on Aug 8, 2012 was received on Angola grounds,

181.  On August 14, 2012 a Baton Rouge couple,
Young Okoro Anyanwu, 60. and his 54-year-old wife,
Beatrice Nwugo Anyanwu, pleaded guilty to
multible felonies, only hours before testimony
begin in their jury trial on defrauding Medi-
Care of $470, 386 through bogus billings for wheel-
chairs and other medical equipment neither
requested nor needed by beneficiaries.  On
Tuesday, Young Anyanwu pleaded guilty to two
count of health care fraud, one count of con-
spiracy to pay or receive bribes or kickbacks
and one count of paying a bribe or kickback,
" the Advocate, " BR couple plead to Medi-
Gare Fraud, Thursday, August 16, 2012, pg 5B,

Complaint, rec doc no. 1    11/2/2012    Page 106 of 131

102, The next day August 15, 2012, plaintiff received the Commissioner's Report (dated Aug 8, 2012) from Comm. Morgan, recommending that plaintiff's appeal be dismissed, with prejudice, at his cost (RS 15:1170, 15:1184-88), for failure to raise a "substantial right" violation and thus, for being frivolous and failing to state a cognizable claim or cause of action for relief, Ante, at para 120, pg 65-66.

She also recommended that the Court impose a PLRA STRIKE in the judgment (RS: 15: 1184-88) and the Clerk of Court be ordered ~~therein~~ therein to record the STRIKE under plaintiff's name, POC number, and docket number, for ~~Reference~~ Reference in any future lawsuits filed by the plaintiff.

103, On August 16, 2012, an overflow crowd heard attorneys for the only African American on the high court argue that she should be its next chief justice,
Chief Justice Catherine Kimball will retire in January. Supporters of Justice

Complaint, rec doc no. 1     11/2/2012     Page 107 of 131

Jeffery Victor say he has longer service because he was elected while Bernette Johnson still held the appellate seat. They want the Louisiana Supreme Court to settle the question. "The Advocate," Judge hear arguments in high court dispute', friday, August 17, 2012, pg 8A

184. On August 23, 2012, the plaintiff filed a Traversal dated August 22, 2012 to the August 8, 2012 Commissioner's Report in connection with case number C601, 099-25 of the civil docket of the 19th JDC.

185. On August 27, 2012, plaintiff received the Order signed on August 20, 2012 by Comm. Rachel P Morgan and entered on August 22, 2012 in connection of case number C604, 199-25 of the civil docket of the 19th JDC, granting the plaintiff's request made in her August 7, 2012 Motion For Suspension of Briefing Delay that the case be stayed because of the

Complaint, rec doc no. 1   11/2/2012   Page 108 of 131

effect the unrentless heat has upon him because of the advance stage 3 hapatitis C virus. In that Order, Comm. Morgan suspended deadline imposed for briefing pending request by either party to reinstate review or pending further order of the court,

106. However, on that same day (Aug 27), without granting any party the right to file any brief and without warning, the Commissioner [Rachel Pitcher Morgan] made her Report and Recommendation (dated Aug. 20, 2012) which was entered August 22, 2012 in connection with a seperate suit for judicial review (RS 15: 1171-1179) bearing docket number C604,490-D, which was filed in the 19th JDC on August 23, 2011. In that suit, the plaintiff complained that on October 22, 2009 prison officials placed him in Adm. Seg, without reason, only minutes of him completing a pleading to file in the state circuit court's October 23, 2009

Complaint, res doc no. 1    11/2/2012    Page 109 of 131

deadline in a suit against prison officials, See Jeanlouis v. Staldee, no 2009-CA-1653, filed in the Louisiana First Circuit Court of Appeal, and subsequently placing him (plaintiff in Camp I Management Program on December 16, 2009 with no written basis in the record to show that the plaintiff was, in fact, charged with rule violations and/or tried in abstentia by a disciplinary board. Thus causing the plaintiff to be unable to appeal or apply for a COA motion with the U.S. Fifth Circuit from the federal district court's September 10, 2009 Judgment denying his June 12, 2009 Rule 60(b) motion See Jeanlouis v. Cain, no 2009-30947 (5ᵗʰ Cir 12/7/2009), COA motion dismissed for want of prosecution. On Oct 22, 2009, a local T.V. station, WAFB-9, ran news coverage of an undercover investigation involving prostitution and the soliciatation of, in which defendant Bruce Dobb was arrested.

Complaint, rec doc no. 1    11/2/2012    Page 110 of 131

107. In her Report and Recommendation in connection with case number C604,490-D, Comm. Morgan recommended that the plaintiff's appeal be dismissed, with prejudice, at his cost (RS: 15:1170, 15:1164-84 and 15:1177A(9)) for failure to raise a "substantial right" violation and thus, for failing to state a cognizable claim or cause of action for relief.

108. On September 4, 2012, plaintiff filed a Traversal dated September 4, 2012 with the 19th JDC in connection to the above-mentioned Comm. Report in case number C604,490-D.

109. On September 4, 2012 the local newspaper, The Advocate ran an article authored by its Acadiana bureau writer Jason Brown entitled, "Veteran Lafayette prosecutor retires", pg 2B, reporting that after 28 years as a prosecutor, Keith States is retiring from the 15th Judicial District Attorney's

Complaint, rec doc no 1      11/2/2012      Page 111 of 131

Office, Stutes declined to comment about the ongoing investigation by the FBI into the District Attorney's office, although he acknowledged that it factored into his decision to retire, He also said he has been considering retirement for some time.

Stutes said he launched his own investigation into the office after he learned that people potentially fraudulent community service documents were submitted in some DWI pleas. The investigation focuses primarily on the DWI cases. compare statement made by reference in paragraph numbers 150 - 153, pp 04 - 07.

190, The following friday, September 7, 2012, plaintiff declare himself an emergency seeking medical attention for severe pain in his lower-back, whereat, the plaintiff (first) learned that prison officials did not renew its contract with Dr Lee, the chiropractor, service. since June 2012,

Complaint, rec doc no. 1  11/2/2012  Page 112 of 131

191. On September 11, 2012, plaintiff wrote a 28 page letter to defendant Cain informing him of the actions of two or more person (under color of law) between June 8 and 28, 2012, conspiring to injure, oppress, threaten and (among other things) intimidate him in his free exercise of his right secured to the plaintiff by the Constitution of the United States to seek adequate and meaningful medical care to serious medical needs, which became the basis of an ARP.

192. On September 13, 2012, in response to a Notice dated July 10, 2012 by Debbie Luck, assistant to the newest 19th JDC Commissioner, Quintillis K. Lawerence, the plaintiff was brought before Comm. Lawerence (via video conference) at the prison main prison conference room, in connection with the case number C600,192-27 filed in the 19th JDC as a suit for judicial review (RS 15:1171-1179) on

Complaint, rec doc no. 1    11/2/2012   Page 113 of 131

March 21, 2011, related to an October 10, 2008 ARP request #LSP-2008-3209, alleging the plaintiff owes a debt balance of $6,501.54, for (among other things) court order payment, medical co-payment, and initial court payment. However, the 19th Jdc Clerk of Court referred to ARP # DWCC-2010-219 in its Notice of filing (dated March 21, 2011), which the plaintiff received March 25, 2011

193. Later on that evening (Sept 13), the plaintiff received the administrative appeal decision dated September 11, 2012 from defendant Cain, reversing the decision of defendant Delaney of June 25, 2012, concluding that the plaintiff's constitutional procedural due process rights were violated in the course of the disciplinary hearing that resulted in a decision to confine plaintiff in the Camp J Management program ("CJMP") at the facility, ex-punged the plaintiff's disciplinary record and authorized that the [appropriate]

Complaint, rec doc no 1    11/2/2012    Page 114 of 131

Classification Review Officer place him to housing custody and job placement to that which he held at the time of the incident.

194. On September 13, 2012, at pg 9B of The Advocate, author writer Bill Lodge (again) run a Commentary entitled, "fallout from Stanford case continues" where he reports that the SEC has invtiated regulatory proceedings against four men, including a Baton Rouge resident, for their alledqued (sis) knowing failure to protect investors from convicted swindler Robert Allen Stanford's $7 billion fraud. Green, according to an Aug 31. SEC filing in Washington, was president of SGC's private client group before the SEC alleged Stanford was nothing more than a Ponzi schemee. "Green earned over $7 million" from Stanford, the SEC alleged while announcing that it may seek re-payment of such earnings from all four men.

Complaint, rec dec no. 1     11/2/2012     Page 115 of 131

195. On September 17, 2012, plaintiff made sick-call request seeking medical attention for the excruciating pain in right knee, and his need to see the doctor and have an x-ray done (if necessary).

196 Later on that day, (Sept 17) the plaintiff mailed letters to the state Supreme Court and the state circuit court attempted to retrieve certain papers so that he may seek certiorio from the U.S. Fifth Circuit's April 27, 2012 Judgment denying him a COA No. 30760 No 2011-30760 to the U.S. Supreme Court. The plaintiff also wrote attorney Miranda Tait of The Advocacy Cent Center at her Lafayette office

197. On September 24, 2012, plaintiff wrote defendant Cain a letter informing him that despite his reversing defendant Delaney's disciplinary board decision as of September 11, 2012, the plaintiff was placed on backlogged instead, which began basis for an ARP,

Complaint, rec doc doc 1    11/2/2012    Page 116 of 131

198, On September 24, 2012, plaintiff received the final Judgment signed on September 17, 2012 by District Judge Wilson Fields (which was entered on September 19, 2012) in connection with case number C601,099-25, adopting as his reasons those stated by the Commissioner on August 8, 2012, and ordered that plaintiff's appeal be dismissed with prejudice at the plaintiff's cost and that the Clerk of Court record a PLRA STRIKE under the plaintiff's name, DOC number and suit docket number for further reference by the Court See supra at paragraph numbers 120 and 121, pp 65-71.

199, The next day, September 25, plaintiff received the Judgment dated September 21, 2012 from the Louisiana Supreme Court from review of the plaintiff's May 25, 2012 Motion for Rehearing in case number 2011-KH-2020 of the criminal docket of the State Supreme Court denying his May 25, 2012 Motion without comment. See supra at paragraph 122, pp 71-72.

Complaint, rec doc no 1    11/2/2012    Page 117 of 131

200. On September 21, 2012 the day the state Supreme Court denied plaintiff's May 25, 2012 Motion for Rehearing in case no 2011-KH-2020, Phillip W Preis, an attorney for 86 Stanford investors, told 19th JDC District Judge R. Michael Caldwell his clients should be allowed to represent all other Louisiana victims of Stanford's proven "7 billion in worldwide frauds in a class-action lawsuit. "The Advocate, 'Lawyer states case for class action, ' ~~Set~~ Saturday, September 22, 2012, sec B.

201. On September 21, 2012, a Baton Rouge couple who operated Carefree Medical Supply, was sentenced by US District Judge James J Brady. Henry Ray Stewart, 47 was sentenced to 46 months after admitting that he and his wife, Helen Faye Stewart who received a three-year sentence, used their medical equipment company to defraud Medicare of slightly more than #1 million, "The Advocate, 'Couple sentenced to Federal prison~~ed~~ for Medicare Fraud, 'Sat. September 22, 2012, 3B. "

Complaint, rec doc no 1    11/2/2012    Page 118 of 131

202. In addition, on September 21, 2012, the day the LSC denied Rehearing, A jury awarded $239,000 to a former Baton Rouge resident, Brain Townsend, who claims he suffered a ruptured bladder in 2007 in 2007 when then-city police officer, Nathan Davis, who is now in Federal prison, allegedly kicked him while handcuffed at a Highland Road police substation. After deliberating for more than three hours, the jury found Davis used excessive force on Townsend by pepper-spraying him, but jurors did not find that Davis kicked Townsend.

Davis' attorney, Henry Olinde, Jr., said Davis — who is serving a federal prison term of more than six years for violating Townsend's civil rights — owes the money from a court legal standpoint.

Townsend's misdemeanor charges for a noise violation and resisting arrest were eventually dismissed and Davis was fired from the Police Department. "The Advocate", Jury

Complaint, ree doc no 1   11/2/2012   Page 119 of 131

Find ex-officer didn't kick former resident,' Saturday, September 22, 2012, see B.

203. On October 2, 2012, plaintiff filed a Motion for Rehearing dated September 28, 2012 with the 19th JDC in connection with the Appeal of the January 9, 2009 ARP request # LSP-2009-0119 in case number 607,099-25.

204. On October 2, 2012, plaintiff re-submitted a summarized 13-page ARP request in response to the Notice of Rejection dated September 27, 2012 in connection with the ARP request dated September 11, 2012 which was given the ARP # LSP-2012-2972, which was received by plaintiff on September 28, 2012

205. On October 4, 2012 at approx. 6:30 Am, plaintiff made sick-call request (repeatedly) seeking medical attention for continuous back-pain, and his need to see a doctor.

206. Soon after, plaintiff was removed from Camp J Management Program and placed at T.U. Extended Lockdown at the prison Main Prison Complex, and assigned to and reside in Cell 9, Upper C tier. on October 4, 2012.

207. On that date, Travis Loller and Mike Stobbe, writers with the AP, story concerning the outbreak of the rare and deadly form of meningitis, which as of Oct. 4, has now sickened 26 people in five states who received steriod injections most mostly for back pain. On October 3, 2012, health officials said four people have died, and more cases are expected.

Eighteen of the cases of fungal meningitis are in Tennessee where a Nashville clinic received the largest shipment of the steriod suspected in the outbreak.

The drug was made by a specialty pharmacy in Massachusetts that issue a recall last week. Investigators, though, say they are still trying to confirm the source

Complaint; eec doc no 1    11/2/2012    Page 121 of 131

of the infections,

Fungal meningitis is not contagious like the more common viral and bacterial meningitis   Some of the patient experienced slurred speech, and difficulty walking and urinating   See supra of paragraph 36 - 45, pp 17-22,

200. On October 7, 2012, plaintiff made sick-call request seeking medical attention for possibly newly case of allergy, caused by the repeated use of excessive force by way of chemical irritants.

209. On October 9, 2012, plaintiff received the (1) Screening Judgment signed by 19th JDC Janice Clark September 27, 2012 dismissing the plaintiff's appeal with prejudice at his cost (R.S. 15:1178, 15:1184-ee and 15:1177A(9)) for failure to raise a "substantial right" violation and thus, for being frivolous and failing to state a cognizable claim or cause of action for relief and imposing a PLRA STRIKE,

Complaint, rec doc no 1     11/2/2012     Page 212 of 131

and (2) Order to Litigation of Third PLRA STRIKE in connection with case number CV04,490-D   See supra at paragraph number 185 - 190, pp 108 - 112.

210. On Wednesday, October 17, 2012, through trickery the plaintiff was made to drop the ARP request submitted on September 24, 2012, Ante at para 197, pg 116, which was Accepted into the system on October 10, 2012, and given ARP # LSP-2012-3049.

211. Shortly after, (Oct 17), plaintiff received the Notice of Rejection dated October 15, 2012 in connection with the resubmit summarized ARP request dated October 2, 2012, which was given the ARP # LSP-2012-3109.

212. On about October 19, 2012, plaintiff reinstated the September 24, 2012 ARP request.

213. On October 23, 2012, plaintiff (again) made sick-call request seeking medical attention

Complaint, rec doc no 1   11/2/2012   Page 123 of 131

for (among other things) a chiropratic-like mattress to sleep on due to constant back pain.

214, On that date (Oct 23), the afore-mentioned outbreak of the rare and deadly form of meningitis, due to steroid injection for pain pain, became (turned into) a criminal matter (investigation)

215, On Thursday, October 25, 2012, the ACLU of Louisiana ask LSP officials to investigate allegations of the misuse of pepper-spray and other chemical irritants on inmates. Marjorie R Esman, the ACLU! Louisiana Executive director, said her office has received numerous allegations of excessive or unjustified use of chemical agent, according to an article run in The Advocate on October 26, 2012 authored by James Minton, Esman wrote a letter to Angola Warden Burl Cain, The ACLU also was a report of Angola's investigation, the letter said, " ACLU ask Angola pepper spray probe ",

Complaint; reldoc no 1   11/2/2012   Page 124 of 131

Claims For Relief

216. The actions of defendants Lamartiniere, Delaney, Vittoria, Davis, Wells, Griffin, Cannon, McMullan Richardson, Woods in using physical force, and chemical agent, against the plaintiff without need or provocation, or failing to intervene to prevent the misuse of force, were done maliciously and sadistically and constituled cruel and unusual punishment in violation of the Eight Amendment of the U.J. Constitution.

217. The action of defendants Wells and Cannon, Richardson, Griffin and Woods in using physical force against the plaintiff without need or provocation consitute the tort of assualt and battery under the law of Louisiana.

218. The failure of defendants Leblanc, Cann, Vannoy, Dupont, Norris, Dodd, Lamartiniere, Delaney, Vittorio, Narvi to take

Complaint; rec doc no 1  11/2/2012  Page 125 of 131

disciplinary or other actions to curb the known pattern of physical abuse of inmates by defendants Well and Cannon constitutes deliberate indifference, and contributed to and approxiately cause the above describ- ed violation of Eight Amendment right and assault and buttery.

219. The action of defendant Nelaney violating the plaintiff's constitutional proce- dural due process rights, finding him guilty of all charges at the June 25, 2012 hearing (including defendant Davis' fasity report) with no evidence to support the charge, and failing to provide written disposition of the charges denied the plaintiff the due process of law in violation of the Fourteenth (14) Amendment to the U.S. Constitution.

220. The action of defendant Vanney, Dupont, and Robb Dodd, Williams and Gosden in to refusing to place him to housing custody to which he hold at the time of the

Complaint, rec dos №1    12/2/2012    Page 126 of 131

incident after defendant Cain reversed the decision of defendant Delaney at the June 25, 2012 disciplinary hearing, expunged the plaintiff's disciplinary record, and instead, backlogged the plaintiff constituted deliberate indifference and ~~tortitut~~ Further denied the plaintiff's due process of law in violation of the Fourteenth Amendment to U.S Const.

221. The actions of failure of the defendants Morris, Dodd Roundtree, Williams, Jason Collins, Mike Thomas, Jane Doe (EMT #3), Blade (EMT #4), John Doe EMT, to provide for the result of the X-rays of the plaintiff's back and leg after the steriod in injection, follow-up examination and treatment of his injured back, and physical therapy for his back and leg, constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eight Amendment to the United States Constitution.

Complaint, see doc no1   11/2/2012   Page 127 of 131

222, The failure of defendant Morris, Dodd, Rountree, Williams, Jason Collins, Jane Doe (Nurse-Practitioner), Mike Thomas, June Doe (EMT "3), Blade (EMT "4), John Doe (EMT) to provide the results of the x-rays of the plaintiff's back and feet, follow-up examination and treatment of his injured back, leg and feet constitutes the tort of negligence under the law of Louisianer,

223, The action of defendants Leblanc, Cain, Vannoy, Dupont, Kenneth, Dodd, La-martinere, Delaney, Foster, Wells, Griffin, to conspire to obstruct or impede the plaintiffs meaningful access to the court, constitutes due process violation and equal protection of the law, in violation of the Fourteenth Amendment to the U.S. Constitution,

224, The action of defendant Leblanc Cain, Vannoy, Dupont, Dodd, Lamartiniere, Delaney, Rountree, Williams, Vittorio, Davis Davis, Richardson, Cannon, and Woods to

Complaint, rec doc no 1     11/2/2012     Page 128 of 131

conspire to obstruct or impede the plaintiff's right to seek adequate for serious medical needs.

220. The failure or refusal to ~~release~~ release the plaintiff, a qualified person with health-related illness, including mental illness, from the harsh condition of living in segregation constitute deliberate indifference to serious mental health need by defendants, Leblanc, Cain, Vannoy, Dupart, Dodd, Lamartinece, Delaney, Foster, and cruel and usually punishment in violation of the Eight Amendment to the U.S. Constitution, as well as Williams and Gooden.

Relief Requested

WHEREFORE, plaintiff request that the court grant the following relief:

220. A declaration that the act and ~~omits~~ omissions described herein violated the

Complaint ree doc no 1   11/2/2012   Page 129 of 131

plaintiff's right under the Constitution and law of the United States.

227. A preliminary and permanent injunction ordering defendants Leblanc to treat plaintiff for all ~~serious~~ medical need and to ~~impaired~~ cease interfering with plaintiff funds (money) and access to the court.

228. Compensatory damage in the amount of $ ___unspecific___ against each defendant, jointly and severally.

229. Punitive damage in the amount of $ ___unspecific___ against each defendant

230. A jury trial on all issue triable by jury.

231. Plaintiff's cost in this suit

232 Any additional relief this court deems just, proper and equitable.

Complaint, rec doc no 1    11/2/2012    Page 130 of 131

Dated  November 2, 2012

Respectfully submitted

GREGORY JEANLOUIS #121703
LOUISIANA STATE PRISON
T:U, Upper C9
ANGOLA; LA, 70712-9998

VERIFICATION

I hereby have read the foregoing complaint and hereby verify that the matter alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true, I verify under perju penalty of perjury that the foregoing is true and correct.

Executed at Angola, La in this __2nd__ day of November, 2012

GREGORY JEANLOUIS

Complaint, rec doc no 1    11/2/2012    Page 131 of 131