LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES

CASE NUMBER: LSP-2012-0150

SECOND STEP RESPONSE FORM
(HEADQUARTERS)

TO:  JEANLOUIS, GREGORY   121703                    LSP
         Offender Name and Number                            Living Unit

Response to Request Dated 02/14/2012, Received in this Office on 03/06/2012:

Your request for an Administrative review of ARP# LSP-2012-0150 has been received.  A qualified member of the Headquarters staff has reviewed your request in order to render a fair and impartial response.

All pertinent documentation surrounding your request, including the unusual occurrence report, statements provided by the security staff and your medical records have been reviewed.  None of the documents reviewed support your allegations.  Through your own actions, staff was forced to use only the amount of force necessary to bring you into compliance with the verbal orders issued to you by staff.  This office concurs with staff's findings on this matter.  As such, no further investigation or administrative intervention warranted.

Your request for Administrative Remedy is denied.

_____                    _____
              Date                                    Secretary's Signature or His Designee

CASE NUMBER: LSP-2012-0150

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: JEANLOUIS, GREGORY 121703                    C JAG 1/R
                                                 Living Quarters

Response to request dated 01/12/2012, received in this office on 01/20/2012

In your letter of complaint dated January 12, 2012, while housed at Camp C, you state that excessive force was used when administering a chemical agent. You further stated that you are being harassed by security. Institutional records reflect that on October 16, 2011 you were issued four disciplinary reports for aggravated disobedience and defiance. Records further reflect that on October 19. 2011 you appeared before the Disciplinary Board, you were found guilty and sentenced accordingly. Sergeant James Griffin stated that he gave you a direct verbal order to remove the cosmetic items from your top bunk and place them in the appropriate place. You refused the orders given and spit at Sergeant Griffin hitting him in the face. Captain Wells came to the unit to escort you to Administrative Segregation and you refused to come to the bars and be restrained. Captain Well gave you several verbal direct orders to come to the bars to be restrained and you refused all given orders. Captain Well exited the tier to retrieve a can Sabre Phantom chemical agent and he once again gave you a several direct verbal order to come to the bars to be restrained, you again refused all given orders. Captain Wells administered a one second burst of the chemical agent and then you complied with the order given to come to the bars to be restrained. You were allowed to shower, given a clean jumpsuit, and seen by Medical Personnel on October 16, 2011. This was done in accordance with Penitentiary Directive 09.002 Use of Force, which states in part: The force used shall be proportional to the threat to which it is a response and shall cease when the resistance ceases. The only force used was that which was necessary to gain control of the situation. No evidence is found to support your allegations. Your request for Administrative Remedy is denied.

Prepared by: _____
                   Tim DeLaney/AWII/kdc

Approved by: _____
                   Joe Lamartiniere/AWIII/tlb

<u>Instructions to Offender:</u>  If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

X  I am not satisfied with this response and wish to proceed to Step Two.

Reason:  LSP-2012-0150

Feburary 17, 2012
Date

121703
Offender's Signature    DOC#

This matter is entitled "This is a request for an emergency administrative relief ("ARP"), Therefore an "Emergency 'ARP'" is not remedied by addressing such as if was a Disciplinary Matter. cf <u>DBA # LSP-2011-0569-W</u>; LSA RS 22:325 (c)

The Dept of Corr. (DOC) installed the NRP process for use by all inmates committed to its custody to which an inmate may seek formal review of complaint which relates to any aspect of his incarceration if less formal methods have not resolve the matter... Through this procedure, inmates shall receive reasonable responses and where appropriate meaningful remedies.

Responses such as herein implies to DOC employers that it is reasonable and appropriate to use excessive force, retaliation, calculated harassment and disregards inmates personal property (included legal papers). Responses like herein create an unsafe and unscrupulous environment for inmate to inhabit, This explains why my stay (custody) in DOC has been so <u>INHUMANE</u>

Page 2 of 2

2012-0150



# THIS IS AN EMERGENCY REQUEST FOR ADMINISTRATIVE RELIEF ("ARP")

RECEIVED

JAN 19 2012

WARDEN'S OFFICE

## GREGORY JEANLOUIS    #121703

Inmate's Name    &    DOC #

OCTOBER 16, 2011 - present    /    EXCESSIVE USE OF
Date of Incident    :    FORCE * CALCULATED
HARASSMENT *
C- JAGUAR 1 RIGHT "7    :    RETALIATION *
Place of Incident    :    FAILURE TO PROTECT
Complaint

RECEIVED

JAN 20 2012

LEGAL PROGRAMS DEPARTMENT

## FACTS OF COMPLAINT

At the time of the incident that is the subject of this ARP, the Complainant, GREGORY JEANLOUIS ("Jeanlouis") was an inmate at the state penitentiary in Angola, Louisiana. James Griffin, Mc "Unknown McQader, "Unknown" Wyatt, John Wells, Michael McMullen, "Unknown" Franklin, and Kevin Groom - serve as correctional security officers at the Angola Facility, assigned to Camp C, a satelite camp within the said facility on D-team. On October 16, 2011, Jeanlouis was "maliciously and sadistically assaulted "without any provocation" by Griffin and Wells, who hold the ranks of Sergeant (Sgt.) and Captain (Capt.), respectively.

At approximately 7 p.m, on October 16, 2011, Sgt. Griffin and Capt. Wells came to Jeanlouis' cell (Camp C, Jaguar 1 Right #7) under the pretense of telling Jeanlouis to remove his personal cosmetic items off the top bunk bed. A brief exchange ensured in which Griffin asked Jeanlouis "what was that you said earlier?". Jeanlouis believing Griffin and Wells was set on harassing him, asked to speak with a superior officer and sat down (in his cell) to wait for one to arrive.

> Griffin apparently angered by the misguided belief that Jeanlouis was the reason for his being assigned to a different assignment. after his enterring Jeanlouis' cell and disposing of Jeanlouis' newspaper clippings used as Exhibits in his (Jeanlouis) civil and criminal litigation. Wells apparently angered by an ARP pending at the Department Headquarter since August 17, 2011, which Jeanlouis filed against him (Wells) when seeking adequate medical care for lower-back pain.

Upon Capt. Wells leaving the unit (Jaguar) for a brief moment, and upon his returned, towling] two (2) tear gas cannister of different types. Wells acting from a desire to retaliate against Jeanlouis for filing grievance (ARP), using excessive physical force in violation of the Cruel and Unusual Punishment Clause prohibited by the Eight Amendment

2.

of the United States Constitution, began to -- combining the gases -- spray tear gas (mace) exceedingly in the face of Jeanlouis, and five (5) minutes later, repeated the malicous and sadistical use of force to cause harm.

A few minutes after the attack, a superior officer on duty, Mr. "Unknown" Franklin, who holds the rank of Major (Maj.), then placed Jeanlouis in handcuff and shackles, took him out of his cell, and walked Jeanlouis in the unit lobby, > Capt. Wells then walked Jeanlouis toward the penitentiary's "administrative lockdown" area. On the way to adm. seg. lockdown, Wells told Jeanlouis "I slap the shit out of you right now, and you know I will!" Upon placing Jeanlouis in a cell at the administrative lockdown unit (Adm. Seg.), Wells had the Unit Sergeant, "Unknown" Jordan, open the cell, whereat, Wells -- contrary to prison policy -- entered the cell with Jeanlouis, unlocked the handcuff and shackles, and ordered Jeanlouis to strip of his prison-jumpsuit, and removed Jeanlouis of his T-shirt, boxers (undershort) and socks.

Sometime later, Jeanlouis went -- as per protocol -- to a physician, at the prison's Treatment Center and complained of eye and skin irratation, burning of the eye and skin, fogging of his eye, increase blood

3.

pressure, as well as migraine headaches and dizziness. Because Griffin issued conduct violations against Jeanlouis for, inter alia, (allegedly) spitting in his face, the Investigative Service took pictures of Jeanlouis' face at the Treatment Center. Captain John Wells also issued similar conduct violations [i.e. Defiance (Rule #3) and Disobidence, Agg (Rule #5)] against Jeanlouis.

On October 18, 2011, the day after the deadline for Jeanlouis to file a certificate of appealability (COA) motion to the United State Fifth Circuit Court of Appeals, which Wells and Griffins' action caused Jeanlouis to miss, Jeanlouis came before the Disciplinary Board (DB) that which was Chairman[ed] by the two (2) officers' superior officer, Kevin Groom, who holds the rank of Lieutenant Colonel (Lt.Col). After being found guilty of the conduct violations issued by both Griffin and Wells, and sentenced to custody change to Camp J Management Program, suspended sentence. Jeanlouis was returned to the (same) Jaguar 1 Right (cell #7) Unit.

Sometimes later, upon Mr. "Unknown" Wyatt, a correctional security officer, who hold the rank of Master Sergeant (Msgt). Seeking Jeanlouis' returned to the Unit, Msgt Wyatt yelled out loud that "Jeanlouis told something" while other inmates on the tier nearby could hear him [thus] stig[mat]ing

4.

Jeanlouis as a "RAT" in an attempt to have him hurt by other inmates.

Thereafter, on January 8, 2012, at approximately 1:30 A.m, Michael McMullen, who uholds the rank of Captain, -- after waking Jeanlouis from sleep -- acting in concert and participating with Wells and Griffin (who was assigned to the unit that early morning) in their objective of intentionally with malicous and fraudulent intent to rid Jeanlouis of his "legal papers" as was their intention on October 16, 2011, See Lost Personal Property Claim I submilled to Warden Office on October 24, 2011, under the pretense of telling Jeanlouis to "straighten his cell", Capt. McMullen issued conduct violations (Le Defianme (Rule #3) and Disobidence, Agg (Rule #5) ) against Jeanlouis, and then placed him in Administrative Segregation Lockdown (Adm. Seg.). In doing so, Capt. McMullen -- acting in concert with Sgt Griffin and Ms. "Unknown" McQader, who hold the rank of Master Sergeant (Msgt) -- committed malfeasance [La RS 14: 143] by way of injuring and filing public record.

Upon placing Jeanlouis in a cell at Adm. Seg., Capt. McMullen handed him a copy of the Disciplinary Report Issued by himself. The Disciplinary Report (DR) read as followed:

5.

"On the above date and approximate time the above named and numbered offender stated "Capt. McMullen" you are a sorry muther fucker. It's 2:00Am I ain't fixing to get out of this bed to straighten my cell. You is a stupid bitch." See Exhibit "A"

Thereafter, upon hearing Jeanlouis complaining of not only the fabrication of the "Report", but also the lack of knowledge of a "Captain" knowing how to write-up an intelligent Disciplinary Report, and omitting the essential element of the conduct violation of Aggravated Disobedience (Rule "5) which states in pertinant part:

5. "Disobedience, Aggravated (Schedule B): Offenders must obey direct verbal orders cooperatively and promptly and not debate, argue or ignore the orders before obeying . . . ." See DISCIPLINARY RULES AND PROCEDURES FOR OFFENDERS (August 2008) ("Rule Book") at pg 18.

Sergeant "Unknown" Wyatt, who at the time of this occussion (sic) working Adm. Seg., contacted Capt. McMullen by telephone, of the lacking in the Report, whereat, approximatedly 3:30 Am, Capt. McMullen returned to Adm Seg., inquired from Jeanlouis the whereabout of the (said) initial Disciplinary Report.

6.

After believing Sgt Wyatt's story of Jeanlouis ridding of the initial 'Report', McMullen then handed Jeanlouis the 'amended-Report which stated as followed:

" On the above date & approximate time, I Capt Michael McMullen gave the above named and numbered offender several direct verbal orders to get up and straight his cell to which he replied, " Capt McMullen you are a sorry mother fucker. It's 2:00 Am. I ain't fixing to get outta this bed to straighten No cell. You is a stupid bitch "
See Exhibit "B"

In Hudson v Palmer, 486 U S 517 (1982), an inmate brought a Section 1983 action alleging that a prison officer had conducted an unreasonable shakedown search of his cell and had filed a false charge under prison disciplinary procedure against the inmate solely for harassment purposes. The Supreme Court held that the inmate was not entitled to constitutional protection for unreasonable searches. However, the Court stated:

On holding that respondent does not have a reasonable expection of privacy enabling him to invoke the protections of the Fourth Amendment does not mean that he is without a remedy

7.

for calculated harassment unrelated to prison needs. Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity. The Eight Amendment always stands as a protection against cruel and unusual punishments." 466 US at 530

In the instant case, the security officers (Griffin, Wells and McMullen) herein, are not conducting unreasonable shakedown search of Jeanlouis cell to ride roughshod over his personal property (including but not limited to Jeanlouis' canteen items and legal papers), instead, the officers are approaching his cell under the pretense of this cell being, quote, unquote, "not straight!", then filing false charges under prison prison disciplinary rules (violations), solely for, inter alia, harassment purposes, at the same times, in bad-faith, maliciously and sadistically for the very purpose of causing harm, use excessive physical force by way of harmful and deadly chemical agent  See supra. at 2-3

"Common problem" in prison occurs '[w]hen you have an excessive amount of personal property, be it newspaper or magazines, and staff wants to remove them, then it become an issue. It has resulted in altercations. In the present case, the staff here at the Angola facility has a knack for unreasonably confiscating Jeanlouis'

8.

personal property, esp. his legal paper and material, at a critical stage of (either) his civil "and/or" criminal proceedings. For example, additionally to Sgt. Griffin's and Capt. Wells' facade on October 16, 2011 (Sunday), two days before the deadline for Jeanlouis to file a COA motion, See Jeanlouis v Cain, Warden No. 2011-30760 (5th Cir 10/26/11), COA dismissed for want of prosecution, Sergeant Griffin, Sgt. 'Unknown' McQader and Capt. McMullen's facade, ante at 5-7, on January 8, 2012, occured less than 40 hours after Jeanlouis signed and received the legal mail (via U.S. District Court for the Western District of Louisiana) related to the reinstated COA motion See Jeanlouis v Cain, Warden, No. 2011-30760 (5th Cir 11/28/11), Motion to Vacate October 26, 2011 Mandate implied as Motion to reinstate COA, is GRANTED. Specifically, TRANSMITTED Record on Appeal to US Court of Appeals re [49] Notice of Appeal consisting of 1 Volumes & Electronic Records. (crt, Lundy, N)

In Hudson v. McMillian, 503 US 1, 4 (1992), the US Supreme Court held that "the use of excessive force (physical) against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury. When ever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusal Punishment Clause, the core judicial inquiry is that set out in Whitley v Albers, 475 US 312, 319-321 (1986): was not

9.

whether a certain quantum of injury was sustained, but whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm Id (quoting Johnson v Click, 481 F 2d 1028, 1033 (2nd Cir 1972)) > >

"When prison officials maliciously and sadistically use force to ~~use~~ cause harm," the Court recognized, `contemporary standard of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eight Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Hudson, 503 US at 9, see also id at 13-14 (BLACKMUN, J, concurring in judgment) ("The Court today appropriately put to rest a serious misguided view that pain inflicted by an excessive use of force is actionable under the Eight Amendment only when coupled with "significant injury," e.g. injury that required (sic) medical attention or leaves permanent marks")

Because of these officers malicous and sadistical, unnecessary and wanton infliction of pain aimed toward Jeanlouis, currently, additional to sufferring from migraine headaches, Jeanlouis' also experience psychological trauma and mental anguish including depression, panic attacks and nightmare of the assault (s). Because his daughter and her family was in a serious car-

10.

wreck during the "Christmas Day/New Years Day" Holiday Season that left Jeanlouis teenage-daughter in a coma, and her 'first cousin/best friend' dead. And he had five (5) days remaining on a 90-days suspended sentence custody change to Camp J. Management Program, stemming from the October 16, 2011 incident with Griffin and Wells. Notwithstanding Jeanlouis brought the malfeasance of Capt. Michael McMullen to his superior officer, Assistant Warden Tim Delaney the day before the Disciplinary Hearing on January 10, 2012, and he (Jeanlouis) perhaps had a fighting chance to have the Fabricated Disciplinary Report dismissed, because of the circumstances surrounding his daughter' recently coming out of a coma, Jeanlouis in the best interest of his daughter and her family, pled bargin to a guilty plea, for a sentence of 12 weeks loss of yard privilege, and 12 week loss of canteen privileges.

Looking in hindsight, its reasonable to conclude that because of the (same) ARP which were pending at Headquarter since August 17, 2011, against Capt. Wells then (as well as his superior officers) when making emergency request for adequate medical care on about April 25/2011, Lt. Col Kevin Groom and Maj. "Unknown" Franklin, tacitly authorized the correctional officers' misconduct. See McDowell v. Jones, 990 F 2d 433, 435 (8th Cir 1993)

11.

Lieutenant Colonel Kevin Groom and Major "Unknown Franklin", knowingly refused and failed to protect I Jeanlouis and he will continue to be irreparably injured injured in his liberty, safety, health and property, by the conduct of their subordinate unless the mentioned officers are DR 1 and/or terminated from their respective employment.

## RELIEF DESIRE

1. Jeanlouis desire the relief that Sgt James Griffin, Captains John Wells and Michael McMullen be terminated for working in concert and participating in the effort to cause Jeanlouis' serious health hazard, impediment to the Court(s), and death by way of chemical agent

3. Jeanlouis desires the relief that Sgt "Unknown" McQader, Sgt "Unknown" Wyatt, Maj. Franklin and Lt Col Groom be written-up on a DR 1 report for the respective part in the ordeal.

3. Jeanlouis desires the relief he's entitled to by law and that his legal paper be secure from harassment and unreasonable confiscation.

4. Jeanlouis desire that no retaliatory action be taken against him for filing this ARP.

12.

5.   Jeanlouis desired that the basic human necessities desposed of by Sgt Griffin, be re-stored to him. e.g. T-shirt, Blue short, Blue jeans, boxers and socks

Respectfully submitted and executed on January 12, 2012. to Warden Office.

/s/

GREGORY JEANLOUIS  #121703
LOUISIANA STATE PRISON
CAMP C, JAGUAR1 RIGHT #7
ANGOLA, LOUISIANA  70712-9998

13.

LOUISIANA STATE PENITENTIARY

ANGOLA, LOUISIANA

ARP NUMBER:  LSP - 2012 - **0150**

RE:  GREGORY JEANLOUIS    121703

LOCATION:  C Jag 1/R/7

I HEREBY ACKNOWLEDGE RECEIPT OF 1ST STEP RESPONSE FORM REGARDING REQUEST FOR REMEDY NUMBER LSP-2012-0150.

RECEIVED BY: _____ 121703 ___

(INMATE'S NAME & NUMBER)

DATE RECEIVED: __February 15, 2012_____

DELIVERED BY: __Sgt Bohannon_____

=======================================================================

1.   Have the inmate sign this receipt.

2.   Delivery Officer signs the reciept and dates it.

3.   Give the Inmate the Manila Envelope and contents.

4.   Return the reciept to LEGAL PROGRAMS DEPARTMENT.

RECEIVED

FEB 2 0 2012

LEGAL PROGRAMS DEPARTMENT

CASE NUMBER: LSP-2012-0150

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)


TO:  JEANLOUIS, GREGORY 121703                    C JAG 1/R
                                                  Living Quarters



Response to request dated 01/12/2012, received in this office on 01/20/2012

In your letter of complaint dated January 12, 2012, while housed at Camp C, you state that excessive force was used when administering a chemical agent.  You further stated that you are being harassed by security.  Institutional records reflect that on October 16, 2011 you were issued four disciplinary reports for aggravated disobedience and defiance.  Records further reflect that on October 19. 2011 you appeared before the Disciplinary Board, you were found guilty and sentenced accordingly.  Sergeant James Griffin stated that he gave you a direct verbal order to remove the cosmetic items from your top bunk and place them in the appropriate place.  You refused the orders given and spit at Sergeant Griffin hitting him in the face.  Captain Wells came to the unit to escort you to Administrative Segregation and you refused to come to the bars and be restrained.  Captain Well gave you several verbal direct orders to come to the bars to be restrained and you refused all given orders.  Captain Well exited the tier to retrieve a can Sabre Phantom chemical agent and he once again gave you a several direct verbal order to come to the bars to be restrained, you again refused all given orders.  Captain Wells administered a one second burst of the chemical agent and then you complied with the order given to come to the bars to be restrained.  You were allowed to shower, given a clean jumpsuit, and seen by Medical Personnel on October 16, 2011.  This was done in accordance with Penitentiary Directive 09.002 Use of Force, which states in part: The force used shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.  The only force used was that which was necessary to gain control of the situation.  No evidence is found to support your allegations.  Your request for Administrative Remedy is denied.



Prepared by: _____
                  Tim DeLaney/AWII/kdc


Approved by: _____
                  Joe Lamartiniere/AWIII/tlb




_____2-14-2012_____          _____

Instructions to Offender:  If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

( )   I am not satisfied with this response and wish to proceed to Step Two.

Reason:

_____

_____

_____

_____


_____                    _____
                Date                                                    Offender's Signature    DOC#

**Louisiana State Penitentiary**
**Angola, Louisiana**
**ARP STATEMENT**

**ARP Number: 2012-0150**                    **Date: January 30th, 2012**

**Offender's Name and Number:  Gregory Jeanlouis #121703**

| |
|---|
| In reference to the above name and numbered offender's request for Administrative Remedy I, Sergeant James Griffin, offer the following statement. |
| On the 16th day of October 2011 at approximately 7:00 p.m. I did order offender Jeanlouis to Remove items of cosmetics from his top bunk and place them inside his lockerbox due to these Items not being in use. In Accordance with Penitentiary Directive 09.042 offenders are to store Their property in the locker or lockers issued to them by the institution. At no time have I Sergeant James Griffin, ever harassed offender Jeanlouis or any other offender, however I do Enforce the rules and regulations of the Louisiana State Penitentiary. |
| |
| |
| |
| |
| |
| |
| |
| |
| This is for your information and further handling…….. |

**Officer Signature:** *Sgt. James Griffin*                    **Date:**  January 30th, 2012

**Officer Name (print): James Griffin, Sergeant**

**Louisiana State Penitentiary**
**Angola, Louisiana**
**ARP STATEMENT**

**ARP Number: 2012-0150**                    **Date: January 31, 2012**

**Offender's Name and Number:  Gregory Jeanlouis #121703**

| |
|---|
| On January 7, 2012 at approximately 6:00pm, I, Capt. Michael McMullen was making routine tier rounds on Jaguar 3 left tier and I noticed legal materials spread out all over offender Jeanlouis' cell.  I ordered him to have all of this legal work put away before he went to bed. During my rounds at approximately 1:30 am, on January 8, 2012, I saw that all the legal work was still spread out all over his cell and he appeared to be asleep.  I then woke him up and gave him several direct verbal orders to get up and straighten up his cell and he refused all orders by laying there and stated, "Captain McMullen, you are a sorry mother fucker. It's 2:00am, I ain't getting out of this bed to straighten no cell, you is a stupid bitch".  At this time I told him he was being placed in Administrative Segregation for rules #3 & 5, to come to the bars to be restrained to which he complied.  I then escorted him to Tiger unit. I deny any of the accusations he made against me. |
| |
| |
| |
| This is for your information and further handling.…..… |

**Officer Signature:** *Michael McMullen*                    **Date:**   January 31, 2012

**Officer Name (print): Michael McMullen, Capt.**
**Camp-C / D-Team**

**Louisiana State Penitentiary**
**Angola, Louisiana**
**ARP STATEMENT**

**ARP Number: 2012-0150**                    **Date: January 30th, 2012**

**Offender's Name and Number:**  Gregory Jeanlouis #121703

| |
|---|
| In reference to the above name and numbered offender's request for Administrative |
| Remedy I, Sergeant Donald Wyatt, offer the following statement. |
| At no time have I ever said anything to offender Jeanlouis or any other offender about offender |
| Jeanlouis allegedly giving any type of information to security in any attempt to have harm done |
| To him. |
| |
| |
| |
| |
| This is for your information and further handling…….. |

**Officer Signature:** _Donald Wyatt Sgt,_                    **Date:** __January 30th, 2012__

**Officer Name (print): Donald Wyatt, Sergeant**

_Donald Wyatt Sergeant_

**Louisiana State Penitentiary**
**Angola, Louisiana**
**ARP STATEMENT**

**ARP Number: 2012-0150**                    **Date: January 30th, 2012**

**Offender's Name and Number:  Gregory Jeanlouis #121703**

| |
|---|
| In reference to the above name and numbered offender's request for Administrative Remedy I, Major Linden Franklin, offer the following statement. |
| On the 16th day of October 2011 I did place restraints on offender Jeanlouis prior to him being placed in Administrative Segregation. I was also in the Jaguar One lobby with offender Jeanlouis and Captain John Wells and at no time did I hear Captain Wells or any other officer make any type of treats towards offender Jeanlouis or any other offender. I later made rounds on the Tiger One and Two unit where offender Jeanlouis was moved from Jaguar and never did he mention anything to me about any alleged problem that he was having with any officer. |
| |
| This is for your information and further handling…….. |
| |

**Officer Signature:** _~~mojo~~ Hfranklin_                    **Date:**   January 30th, 2012

**Officer Name (print): Linden Franklin, Major**

**Louisiana State Penitentiary**
**Angola, Louisiana**
**ARP STATEMENT**

**ARP Number: <u>2012-0150</u>**                    **Date: <u>January 30th, 2012</u>**

**Offender's Name and Number:  <u>Gregory Jeanlouis #121703</u>**

| |
|---|
|      In reference to the above name and numbered offender's request for Administrative |
| Remedy I, Captain John Wells, offer the following statement. |
| On the 16th day of October 2011 at approximately 7:00 p.m. I did administer one-one second |
| Burst of Sabre Phantom chemical agent into offender Jeanlouis' cell in order to gain compliance |
| With my orders for offender Jeanlouis to come to the bars of his cell to be restrained to placed in |
| Administrative Segregation due to previous rule violations, in which he was flatly refusing to |
| comply with, however at no time did I ever use any other type of chemical agent on offender |
| Jeanlouis. At no time have I ever threatened offender Jeanlouis or any other offender with the |
| Use of force. On the 16th day of October 2011 there was no officer by the name of Jordan |
| assigned to work anywhere on the D-Team inside of Camp-C. At no time did I ever enter any |
| cell with offender Jeanlouis or any other offender to remove restraints from them. Never have I |
| Ever refused medical care to any offender including offender Jeanlouis nor have I ever retaliated |
| Against offender Jeanlouis for any previously filed A.R.P.'s, however in accordance with |
| Penitentiary Directive 09.042 all of the offenders property must be stored in the locker or |
| Lockers issued to them by the Institution, not on the top bed in the cell. |
| This is for your information and further handling…….. |

**Officer Signature:** _Cpt. John Wells_                    **Date:**  January 30th, 2012

**Officer Name (print): John Wells, Captain**

**Louisiana State Penitentiary**
**Angola, Louisiana**
**ARP STATEMENT**

**ARP Number: 2012-0150**                              **Date: January 30th, 2012**

**Offender's Name and Number:  Gregory Jeanlouis #121703**

| |
|---|
| In reference to the above name and numbered offender's request for Administrative |
| Remedy I, Sergeant Mary McQuarter, offer the following statement. |
| On the 16th day of October 2011 I was assigned to work the Jaguar Two unit. At no time did I |
| See or hear Captain John Wells or Sergeant James Griffin ever threaten offender Jeanlouis in |
| Any manner nor did I see or hear Captain Wells or Sergeant Griffin act in an un-professional |
| Manner. |
| |
| |
| |
| This is for your information and further handling…….. |

**Officer Signature:** Mary McQuarter, Sgt                        **Date:**   January 30th, 2012

**Officer Name (print): Mary McQuarter, Sergeant**

Ob

## DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
## CORRECTIONS SERVICES
## UNUSUAL OCCURRENCE REPORT
### (Category A, B, C Incidents)

RHB

**INSTITUTION: Louisiana State Penitentiary**

| NAME | NUMBER | DORM OR CELLBLOCK | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| *Gregory Jeanlouis* | *121703* | *Jaguar One Right* | *October 10th, 2011* | *Approx. 7:00pm* |

| LOCATION OF INCIDENT | WITNESSES: *None* |
|---|---|
| *Jaguar One Right cell #7* | |

### TYPE OF INCIDENT - CHECK APPROPRIATE BOXES

**Category A Incidents:**
- [ ] Escape
- [ ] Death by other than natural causes
  - [ ] Accident
  - [ ] Violence
  - [ ] Suicide
  - [ ] Suspicious
  - [ ] Unknown
  - [ ] Unnatural
  - [ ] Execution
- [ ] Assault resulting in life threatening Injury
  - [ ] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Staff Injured in Line of Duty
- [ ] Other
  - [ ] Significant Property Damage
  - [ ] Hostage Situation
  - [ ] Major Work Stoppage of Offenders
  - [ ] Employee Work Stoppage
  - [ ] Riot
  - [ ] Natural Disaster
  - [ ] Tact Team/Outside Assistance
  - [ ] Lockdown of all or part of facility
  - [ ] Hunger Strike of Entire Facility or Multiple Units
  - [ ] Large Scale Evacuation
  - [ ] Other - Determined by Unit Head

**Category B Incidents:**
- [ ] Escapee Apprehended
- [ ] Death Due to Natural Causes
  - [ ] Expected
  - [ ] Unexpected
- [ ] Gunshot - Shoot to disable (Class I)
- [ ] Assault with significant injury
  - [ ] Offender on Staff
  - [ ] Offender on Offender
  - [ ] With Weapon
  - [ ] Without Weapon
  - [ ] Attempted Suicide with Significant Injury
  - [ ] Self Mutilation with Significant Injury
- [ ] Hunger Strike – Individual
- [ ] Hunger Strike – Organized
- [ ] Use of Force w/Significant Injury
  - [ ] Lockdown of Limited Number of Offenders
- [ ] Significant Water/Power Outage
- [ ] Property Damage - Limited
- [ ] Evacuation – Limited
- [ ] Other – Employee Arrest
- [ ] Other - Determined by Warden

**Category C Incidents:**
- [ ] Agg. Sex Offense (Offender/Staff)*
- [ ] Agg. Sex Offense (Offender/Offender)*
- [ ] Staff/Civilian Sexual Misconduct*
- [ ] Gunshot - Warning Shot (Class II)
  - [ ] Self Defense - No Human Injury or Death
- [x] Assault With No Significant Injury
  - [x] Offender on Staff
  - [ ] Offender on Offender
  - [x] With Weapon
  - [ ] Without Weapon
  - [ ] Throwing of Substances
- [x] Use of Force
  - [ ] Immediate
  - [ ] Planned
  - [x] Chemical Agents on Single Offender
  - [ ] Use of Taser
  - [ ] Cell Entry Team (Elec. Shield)
  - [ ] Less Lethal Weapons
  - [ ] Restraints Used (Restraint Chair, 4 Point, etc.)
  - [ ] Staff on Offender
- [ ] Individual Hunger Strike

\* Copy to Investigations

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

*On the above stated date and approximate time while I, Captain John Wells, was making rounds on the Jaguar One Right tier Sergeant James Griffin gave offender Jeanlouis several direct verbal orders to place several items of cosmetics in his lockerbox due to them not being in use. Offender Jeanlouis flatly refused to comply with Sergeant Griffin's orders by becoming defiant and then spitting on Sergeant Griffin striking him in the face. I then gave offender Jeanlouis several direct verbal orders to come to the bars to be restrained to be placed in Administrative Segregation in which offender Jeanlouis flatly refused to comply with and again became defiant. I then exited the tier and retrieved a canister of Sabre Phantom chemical agent and then returned to offender Jeanlouis' cell. I again gave offender Jeanlouis several more direct verbal orders to come to the bars to be restrained in which he again refused to comply with. I then administered one-one second burst of Sabre Phantom chemical agent into offender Jeanlouis' cell. Then and only then did offender Jeanlouis comply with my orders to come to the bars to be restrained. Offender Jeanlouis was then offered a shower but refused, he was then given a clean jumpsuit and was then seen by medical personnel at the R.E.B.T.C. and was then placed in Administrative Segregation on the Tiger One Right Tier. Sergeant James Griffin was then relieved and also seen by medical personnel at the R.E.B.T.C. and then returned to Camp-C and resumed his duties. Duty Warden Cathy Fontenot and Major Linden Franklin were notified. This is for your information and further handling......*

| REPORTING OFFICER | DATE COMPLETED | TIME COMPLETED |
|---|---|---|
| *CaptJohnWells* | 10/16/2011 | Approx 9:00pm |

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
DISCIPLINARY REPORT
INSTITUTION: L.S.P. ANGOLA

| 1. Name of Inmate: *Gregory Jeanlouis* | 2. Number: *121703* | 3. Date of Incident: *October 16th, 2011* | 4. Time of Incident: *Approx 7:02pm* |
|---|---|---|---|
| 5. Place of Incident: *Jaguar One Right Cell #7* | 6. Job Assignment (Inmate): *Extended Lockdown* | 7. Housing Assignment (Inmate): *Jaguar One Right Cell #7* | |
| 8. Rule Violated: *Aggravated Disobedience, Defiance* | | 9. Rule Number: *#5 & #3* | |

10. Description of Incident (Include all relevant information – "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force", use other side if necessary)

*On the above stated date and approximate time I, Captain John Wells, gave offender Jeanlouis several direct verbal orders to come to the bars to be restrained to be placed in Administrative Segregation due to previous rule violations. Offender Jeanlouis flatly refused to comply with my orders by stating to me "I AINT COMING TO THE BARS BITCH, FUCK YOU!!!!!!". I then exited the tier and retrieved a canister of Sabre Phantom chemical agent and then returned to offender Jeanlouis' cell and again ordered him to come to the bars to be restrained and again offender Jeanlouis flatly refused to comply with my orders. I then Administered one-one second burst of Sabre Phantom chemical agent into offender Jeanlouis' cell. Then And only then did offender Jeanlouis comply with my orders to come to the bars to be restrained.*

| 11. Inmate Placed in Adm Seg | X | Yes | | No | |
|---|---|---|---|---|---|

| 12. Signature of reporting employee: | 13. Name, Title, Assignment (Print): *John Wells, Captain  Camp-C / D-Team* |
|---|---|

| 14. Date of Report: *October 16th, 2011* | 15. Time of Report: *Approximately 7:40pm* | 16. Report (copy) given to above inmate by: | 17. Inmate's Signature: |
|---|---|---|---|

| 18. Plea by Inmate: | Not Guilty | Guilty | 19. Verdict: | Not Guilty | Guilty |
|---|---|---|---|---|---|

| 20. Date of Hearing: *19 Oct 2011* | 21. Counsel Substitute : DOC#: *None* |
|---|---|

22. Motions:

23. Reasons for Disposition:
[✓] Report is clear and precise.    [ ] Lack of a credible defense/little or no defense.    [ ] Based on his statement.
[ ] The officer's version is determined to be more credible than the inmate's.    [ ] Pled guilty/accepted guilty plea.
[ ] Only defense is denying contents of report..    [ ] The inmate presented no evidence to refute the charges.
[ ] The Investigative officer's testimony was deemed more truthful and accurate than the inmate's.    [ ] Plea bargain
[ ] The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
[ ] Other

24. Reasons for Sentence:
[✓] Seriousness of offense.    [ ] The need to protect the institution, employee, or other.
[ ] Poor Conduct record.  A total of _____ rule violation(s). A total of _____ Schedule B violations since _____
A total of _____ # _____ rule violations since _____

[ ] Other _____

25. Sentence:
*Quarter change to long J management Program*

Suspended [✓] *90* Days
Imposed [ ]

26. Sentence:

Suspended [ ] _____ Days
Imposed [ ]

27. DISCIPLINARY BOARD:
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

CHAIRMAN (DISCIPLINARY OFFICER )

MEMBER

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
DISCIPLINARY REPORT
INSTITUTION: L.S.P. ANGOLA

| 1. Name of Inmate: *Gregory Jeanlouis* | 2. Number: *121703* | 3. Date of Incident *October 16th, 2011* | 4. Time of Incident: *Approx 7:00pm* |
|---|---|---|---|
| 5. Place of Incident: *Jaguar One Right Cell #7* | 6. Job Assignment (Inmate): *Extended Lockdown* | | 7. Housing Assignment (Inmate): *Jaguar One Right Cell #7* |
| 8. Rule Violated: *Aggravated Disobedience, Defiance* | | 9. Rule Number: *#5 & #3* | |

10. Description of Incident (Include all relevant information – "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side if necessary )

*On the above stated date and approximate time I, Sergeant James Griffin, gave offender Jeanlouis several direct verbal orders to place several items of cosmetics in his lockerbox due To them not being in use. Offender Jeanlouis flatly refused to comply with my orders by Stating to me " FUCK YOU, YOU SUCK MY DICK!!!!!" offender Jeanlouis then spit on me Striking me in the face. Captain Wells was then notified.*

| 11. Inmate Placed in Adm Seg. | X | Yes | | No | |
|---|---|---|---|---|---|

| 12. Signature of reporting employee: | 13. Name, Title, Assignment (Print): *James Griffin, Sergeant   Camp-C / D-Team* |
|---|---|

| 14. Date of Report: *October 16th, 2011* | 15. Time of Report: *Approximately 7:30pm* | 16. Report (copy) given to above inmate by | 17. Inmate's Signature: *Refused to Sign* |
|---|---|---|---|

| 18. Plea by Inmate: | Not Guilty | Guilty | 19. Verdict: | Not Guilty | Guilty |
|---|---|---|---|---|---|

| 20. Date of Hearing : 17 Oct 2011 | 21. Counsel Substitute : DOC#   NONE |
|---|---|

22. Motions: *to call witness*

23. Reasons for Disposition:
[ ✓ ] Report is clear and precise.    [ ] Lack of a credible defense/little or no defense.    [ ] Based on his statement.
[ ] The officer's version is determined to be more credible than the inmate's.    [ ] Pled guilty/accepted guilty plea.
[ ] Only defense is denying contents of report.    [ ] The inmate presented no evidence to refute the charges.
[ ] The Investigative officer's testimony was deemed more truthful and accurate than the inmate's.    [ ] Plea bargain
[ ] The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
[ ] Other _____

24. Reasons for Sentence:
[ ✓ ] Seriousness of offense.    [ ] The need to protect the institution, employee, or other.
[ ] Poor Conduct record. A total of _____ rule violation(s). A total of _____ Schedule B violations since _____
A total of _____ # _____ rule violations since _____
[ ] Other _____

25. Sentence: *Duties change to Camp J Management Program*    Suspended [ ✓ ] 9 0 Days
Imposed [ ]

26. Sentence: _____    Suspended [ ] _____ Days
Imposed [ ]

27. DISCIPLINARY BOARD:
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

CHAIRMAN (DISCIPLINARY OFFICER)

MEMBER

HC-26 form A

Date: _10 - 16 - 11_

# Refusal To Accept Medical Care

This refusal of medical attention is made voluntarily and after full explanation of the medical attention recommended and the consequences of refusing it. I have read this statement and understand the nature of its contents.

I release the Department of Public Safety and Corrections from any liability for any harm that may result from this refusal of treatment.

_Signature of Patient_

_Witness_

_____
Witness

I, _Gregory Toibous_ # _121763_, hereby refuse the following described medical attention: _____

_Attending Prescriber_

Distribution:

Medical record: revised 8-1-02

## ROBERT E. BARROW, JR. TREATMENT CENTER
### ACCIDENT / INJURY REPORT
#### VITAL STATISTICS

DATE: 10 , 16 , 11                                TIME SEEN: 20 : 20

NAME: Gregory JeanLouis          DOC#: 121203          AGE: 49  RACE: B

LIVING QUARTERS: C Jag 1/R          JOB ASSIGNMENT: 4/D          LAST TETANUS: ___

| MEDICATIONS: Carbamazipine, Naproxen | ALLERGIES: NKDA |
|---|---|

| DATE OF ACCIDENT: 10/16/11 | TIME OF ACCIDENT: Approx. 19:40 | ACCIDENT LOCATION: Camp C |
|---|---|---|

| TIME: 20:20 | B/P: 118/75 | PULSE: 100 | RESP: 18 | LOC: AoX-4 | TEMP: 98.5 | BS/SpO2: 100 |
|---|---|---|---|---|---|---|
| TIME:  : | B/P: / | PULSE: | RESP: | LOC: | TEMP: | BS/SpO2: |
| TIME:  : | B/P: / | PULSE: | RESP: | LOC: | TEMP: | BS/SpO2: |

#### CHIEF COMPLAINT AND INITIAL ASSESSMENT

CHIEF COMPLAINT, HISTORY AND ASSESSMENT: offender brought to HCU after altercation w/security, offender Ambulated w/o Assistance. pt complaining of throat pain. A. had chemical Agent used on him, pt was allowed shower and given a clean Jumpsuit. pt has no obvious Injuries.

MEDIC SIGNATURE: M567 [signature] EMT-P

#### PHYSICIAN ASSESSMENT AND TREATMENT

☐CATEGORY A                ☐CATEGORY B                ☐CATEGORY C

***SEE DEFINITIONS ON THE BACK OF THIS SHEET FOR EXPLANATION OF CATEGORY***

650mg Tylenol

☐Duty Status ___          ☐Appointment ___
☐Diet ___                 ☐Dressing Change ___
                          PHYSICIAN SIGNATURE: ___

| TIME LEFT: 20.46 | TRANSPORTATION: Ambulate | DESTINATION: RTO |
|---|---|---|
|  |  | PAGE ___ OF ___ |

LSP-TC 07     Rev. 11/2006          ACCIDENT/INJURY REPORT

015495

Form HC-01-A
4 September 2009

**Health Care Request Form**

Institution _WJ___

Gregory Jeanlouis  121703  49    Tig / 1/k    Ext/Co
Name                DOC #    Age    Housing        Job Assignment

## OFFENDER COMPLETE THIS SECTION ONLY -- COMPLAINT AND/OR REQUEST:

In Adm Seg, have medical condition with Feet/ check medical check
Need socks for Ft. / also not taken Eye dr

Healthcare Personnel Screening: Date 10/17/11  Time: 0540  Location Seen: Tiger

(Circle One):  Emergency / (Routine Sick Call) Work Related Allergies: NKDA

B/P 133/82  Pulse 70  Resp 16  Temp 98.8  Other _____

Assessment/Comment: C/o of needing socks for a medical condition (feet)
deformities & swelling NAD. A&O x3 pt has no other complaint at this time

**Disposition:**

MD - Review

**New Medications Ordered:**

_____
_____
_____

**Health Care Practitioner Notes:**

Total #: _____

Screener's Signature: _____ EMT-S30

HCP's Signature: _____

Date: _____

Total: $ 3.00

☐ No Fees  ☑ $3 Access Fee  ☐ $6.00 Access Fee  ☐ $2 for Each Prescription Fee: $ _____

I understand that in accordance with Dept. Reg. No. B-06-001, I will be charged $3.00 for routine request for health care services, $6.00 for emergency request and $2.00 for each new prescription written and dispensed to me, with the exceptions noted in the referenced regulation. I am aware that if I declare myself a medical emergency and the health care staff finds that and emergency does not exist, I may be given a disciplinary report for malingering.

Offender Signature

121703
DOC #

10/17/11
Date

_____ Smt
Witness Signature

Original - Offender's Medical Record    Yellow - Business Office    Pink - Offender's Copy

| | CHAPTER: SECURITY AND CONTROL | DIRECTIVE NO. 09.002 |
|---|---|---|
| June 27, 2011 | | |
| | SUBJECT: USE OF FORCE | ACA STANDARD: 4-4084, 4-4084-1, 4-4090-92, 4-4173, 4-4199, 4-4200-04, 4-4206, 4-4281, 4-4399, 1-CTA-3A-16, 1-CTA-3A-17, -CTA-3A-19, 1-CTA-3A-20, 1-CTA-3A-23, 1-CTA-3A-24, 1-CTA-3B-08 |
| LOUISIANA STATE PENITENTIARY | REFERENCE: Department Regulation Nos.C-01-008, C-02-006, C-03-003; Penitentiary Directive Nos. 04.003, 09.007/B, 09.017, 09.021, 09.052, 13.019, 13.023,13.026 | |

PURPOSE:  To provide guidelines to govern the use of force and its limitations and to describe prohibited activities.  This policy is designed to assist employees in acting reasonably when confronted with situations requiring the use of force.

APPLICABILITY:    All Louisiana State Penitentiary employees.

POLICY:    It is the policy of Louisiana State Penitentiary that all reasonable steps be taken to minimize situations requiring the use of force by staff against offenders and to minimize the amount of force used in those situations.  It is recognized, however, that force may be necessary to accomplish the mission and goals of the Department to provide for public safety, staff and offender safety, and the maintenance of stability within the institution.  Employees will be provided with proper training and guidance in the use of force applications.

Procedures governing the use of force include both annual qualifications for staff likely to engage in activity that may involve the use of reasonable force and necessary certification under applicable regulating statutes for employees issued firearms or other security equipment.  Security equipment utilized in use of force applications shall be in accordance with Penitentiary Directive No. 09.021 and Department Regulation No. C-01-008 and C-02-006.  Only approved state-issued equipment will be used in the performance of official duties.

It is further the policy of Louisiana State Penitentiary that lethal weapons, less lethal weapons, electronic muscular disruption devices and restraints be used only by employees specifically trained in their use and when all available less drastic measures fail to accomplish control in handling group disturbances and subduing individuals.  Said force employed shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

DEFINITIONS:

Electronic Muscular Disruption (EMD) Device:    A device that utilizes electro-muscular disruption technology that disrupts the body's ability to communicate messages from the brain to the muscles, causing motor skill dysfunction. For the purpose of this regulation, EMD's

Penitentiary Directive No. 09.002
June 27, 2011
Page 2 of 18

include only the electronic capture shield and electronic restraint belt system. (The TASER® is also considered an EMD; however, refer to Department Regulation No. C-02-006A "Use of TASER®" for specific procedures regarding use of the TASER®.)

Excessive Force:  Force is excessive when the resulting application of force is inappropriate to the circumstances either during an incident or in the aftermath of an incident.

Force:  The application of a technique, action or device to compel a change in the actions of another person, which usually will result in compliance with a desired behavior, submission to authority or to deescalate a threatening behavior.

Force Continuum:  Broad categories of force, in identifiable escalating/de-escalating stages of intensity, in response to an individual's actions. The categories are commonly identified as officer presence, verbal direction or command, soft empty-hand control, hand-held chemical spray or EMD devices, hard empty-hand control, batons and firearms. An individual's actions may be defined in broad categories including full compliance to commands, verbal uncooperativeness, passive resistance, active resistance, active aggression and aggravated active aggression (lethal force.)

Less Lethal Force:  Defensive techniques or weapons that do not normally nor are intended, when properly applied, to cause death or serious bodily injury.

Less Lethal Weapons:  Weapons designed to reduce the potential of causing serious physical injury or death. Use is restricted to situations where higher levels of force are unnecessary and lesser levels are inappropriate or ineffective. Less lethal weapons include:

1)     Chemical Agents and Munitions: Tear gas, mace spray or irritant dusts are chemical agents that cause irritation to the eyes, skin or respiratory system. Chemicals may be administered directly through a hand-held aerosol spray or at longer ranges by being fired or dispersed out of a launcher.

2)     Intermediate/Impact Weapons: Examples include batons and shields which are available options in the force continuum.

Lethal Force:  Any use of force reasonably calculated in the manner used to produce death or serious bodily injury.

Lethal Weapons:  Any weapon reasonably calculated in the manner used, to produce death or serious bodily injury.

Necessary Force:  Force used when all other options have been exhausted, unavailable or are not feasible.

Penitentiary Directive No. 09.002
June 27, 2011
Page 3 of 18

Reasonable Force: Only that force which is reasonable and necessary under the particular circumstances to protect the public, staff, offenders, or others from bodily injury or only after other reasonable alternatives have been exhausted or it is determined that such alternative action(s) would be ineffective under the circumstances.

Restraints: Mechanical, electronic or other devices used in the force continuum to aid in the restriction of an individual's bodily movement for security purposes. (See Health Care Policy No. HC-29 "Utilization of Restraints for Medical and Mental Health Management Orders" for information concerning the use of restraints for medical and mental health purposes.)

Severe Mental Health Illness: A chronic or acute mental illness that impairs the offender's ability to maintain safety of self and others and maintain activities of daily functioning.

Severely Developmentally Delayed: An intellectual disability that impairs the offender's ability to provide self care or maintain their safety. In addition, this type of impairment may render the offender vulnerable to victimization by others.

See the attached Weapons List for items/devices/weapons authorized for use at LSP.

PROCEDURE:

A.    USE OF FORCE GUIDELINES

    1.    General Considerations:

        a.    The use of any type of force for punishment or reprisal is strictly prohibited.

        b.    Whenever possible, the determination to use force shall be made by the highest ranking supervisor in the immediate area.

        c.    Whenever possible, force shall not be used against offenders with severe mental health illness (SMHI) or who are severely developmentally delayed (SDD) before appropriate Medical or Mental Health personnel can be called to the scene. The Mental Health Director shall be responsible for maintaining a list of offenders with SMHI and SDD which shall be updated on a weekly basis or more often, if needed. This list shall be easily accessible to supervisory staff for use when needed.

        d.    Reasonable steps shall be taken to minimize the amount of force used.

Penitentiary Directive No. 09.002
June 27, 2011
Page 4 of 18

    e.    Employees will not carry security equipment on their person unless authorized by the Warden or his designee. Restraining devices may be carried by supervisory personnel while on duty. Handcuffs must be worn in an approved attachable handcuff case.

    f.    Individual units may maintain small amounts of security equipment in areas inaccessible to offenders.

    g.    Assigned trip officers shall be authorized to use chemical agents and the ASP in order to prevent an escape or to stop a disturbance while escorting offenders outside institutional grounds.

    h.    With the exception of extreme emergencies, firearms are not permitted inside a secure compound or area unless authorized by the Warden.

2.    Elements to Consider in the Review of Use of Force Incidents

    a.    The extent of the injury suffered.

    b.    The need for the application of force.

    c.    The relationship between the need and the amount of force used.

    d.    The threat reasonably perceived by the responsible supervisor

    e.    Any efforts made to temper the severity of a forceful response.

3.    For Use of Less Lethal Force:

    a.    Less lethal force is force which normally causes neither death nor serious bodily injury.

    b.    Physical force, chemical agents, EMDs, intermediate/impact weapons, or less lethal ammunitions and devices, and canine units may be used only in the following instances:

        1)    Prior to the use of lethal force:

            a)    To prevent the commission of a felony, including escape.

            b)    To prevent an act which could result in death or serious bodily injury to one's self or to another person.

        2)     To defend one's self or others against any physical assault.

        3)     To gain offender compliance when other less lethal force options within the force continuum have failed, are clearly inappropriate and/or ineffective.

        4)     To prevent commission of a misdemeanor.

        5)     To prevent serious damage to property.

        6)     To enforce institutional rules.

        7)     To prevent or quell a riot.

    c.     The amount of physical force applied shall be appropriate to the amount of resistance. Once compliance starts, escalation of force stops.

4.    For Use of Lethal Force:

    a.     Lethal force is force that in the manner used, is capable of causing death or serious physical injury.

    b.     It may be used only as a last resort and then only in the following instances:

        1)     To prevent the commission of a felony, including escape.

        2)     To prevent an act which could result in death or severe bodily harm to one's self or another person.

5.    For use of the following:

    a.     Mechanical and Flex Cuff Restraints (see Penitentiary Directive No. 09.007/B).

    b.     Extreme Restraints (see Penitentiary Directive No. 10.002).

    c.     Chemical Agents, Intermediate/Impact Weapons and Other Less Lethal Weapons (see Section E below).

    d.     Electronic Muscular Disruption Devices (see Section F below).

Penitentiary Directive No. 09.002
June 27, 2011
Page 6 of 18

    e.    Lethal Weapons (see Section B below).

    f.    Canine Units (see Section G below).

B.    USE OF LETHAL WEAPONS

    1.    All staff, when assigned weapons, shall use the following procedure in the prevention of escapes and in situations described in Section A, 4.

    2.    Lethal weapons should be utilized only as a last resort and only as authorized herein.

    3.    In the utilization of firearms, the following procedures shall be followed:

        a.    A verbal warning to cease actions (if feasible). In the case of an escape, this should occur when an unauthorized offender(s) gets within 10 feet of a perimeter fence.

        b.    Warning shot (if feasible) to ensure that the offender is absolutely aware of the seriousness and probable consequences of his actions.

            IMPORTANT NOTE: The only exception of the provisions in Section B, 3, a and b would be when the circumstances require immediate action to protect life or stop an escape in progress where a verbal warning or warning shot is not practical. Warning shots may not be fired where it is foreseeable that a member of the public may be endangered.

        c.    Shoot to disable (render offender incapable of continuing with action; which prompts the use of lethal force).

    4.    Officers should be aware of escape attempts via aircraft.

        a.    Officers should contact the Control Center of the approach of low flying or unauthorized aircraft.

        b.    The Control Center shall advise appropriate tower officers of any expected aircraft.

        c.    If it is suspected an escape attempt is being made by an aircraft, the officer should gather as much information as possible as to the craft's identifying markings, number of occupants and possible number of offenders involved.

Penitentiary Directive No. 09.002
June 27, 2011
Page 7 of 18

    d.     If an officer is fired upon by the aircraft or if the occupants are in the act of committing a felony, the officer may fire to protect himself, attempt to disable the craft, and to prevent its departure.

    e.     The Control Center and highest ranking officer in the area shall notify the appropriate authorities of unapproved aircraft as soon as possible.

5.    After Use

    a.     When a weapon has been utilized, the affected individual(s) that suffered the wound shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

    b.     Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

    c.     In accordance with Department Regulation No. C-01-008 "Firearms and Weaponry Training," a Shooting Review Panel appointed by the Secretary shall review the circumstances surrounding each incident where an offender or other person is shot by departmental staff and shall make recommendations as necessary. The meetings shall occur at least quarterly but may occur on an incident-by-incident basis at the discretion of the Chief of Operations.

    d.     All instances in which lethal weapons are used shall be reported in accordance with Section F of this regulation.

6.    Armed Duty Post

    a.     With the exception of those offenders being transported outside the institution, armed duty posts shall be positioned in areas inaccessible to offenders. Armed guards shall position themselves at a minimum of seventy-five (75) feet from all offenders.

    b.     Armed escorts should exercise extreme caution during any movement of offenders in the course of outside trips and farm line operations. Mass movement of offenders from a security perimeter to another area requires armed escorts during hours of darkness or at time designated by the Warden.

    c.     Offenders are not allowed in the Armory or in areas where officers receive and/or return security equipment.

Penitentiary Directive No. 09.002
June 27, 2011
Page 8 of 18

C.    USE OF CHEMICAL AGENTS, INTERMEDIATE/IMPACT WEAPONS, EMD's AND OTHER LESS LETHAL WEAPONS

1.    Chemical agents, intermediate/impact weapons, or less lethal munitions and devices shall not be used as punishment under any circumstances and may be used against an offender or a group of offenders only in the following circumstances:

a.    To quell a riot and/or prevent loss of life, serious injury to person(s), and/or extensive destruction of property,

b.    To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution, or

c.    To regain control of the institution or a part of it.

2.    The use of chemical agents, intermediate/impact weapons or less lethal munitions and devices is considered a use of force.  When used, only the minimum amount of force necessary to control the situation shall be used.  Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

3.    A determination for corporate or mass use of chemical agents, intermediate/impact weapons or less lethal munitions and devices shall be made by the Warden or designee. (who should be the highest ranking supervisor on duty in the immediate area where the incident is occurring).

If the electronic capture shield (EMD) is to be used, the highest ranking official on duty in the immediate area where the incident is occurring will designate the officer who will use the shield. Only officers who have been trained in the proper use of the electronic capture shield may be designated to use the shield.

4.    Chemical agents, intermediate/impact weapons, EMD's or less lethal munitions and devices shall not:

a.    Be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination for use under these circumstances, or against an individual offender shall be made by the highest ranking supervisor on duty in the area.

Penitentiary Directive No. 09.002
June 27, 2011
Page 9 of 18

b. Be used on those offenders who are incapable of responding to the commands and orders being given to them by staff (e.g., during epileptic seizures, etc.).

c. Whenever possible under prevailing circumstances, be used against an offender who is assigned to a Mental Health Treatment Unit until a qualified medical or mental health worker is present and attempted to control the situation, unless it is necessary to prevent loss of life, serious injury to person(s), or extensive property damage.

1) The medical or mental health worker must respond, assess, and attempt an intervention prior to the use of a chemical agent or the Cell Entry Team.

2) If the intervention is not successful, the medical or mental health worker may authorize the use of chemical agents or the Cell Entry Team.

3) In such cases the medical or mental health worker will remain present at the head of the tier to monitor the offender's behavior during the use of chemical agents or Cell Entry Team.

4) The medical or mental health worker will document the assessment and the success or failure of the intervention, time of incident, and follow-up treatment.

5) When immediate action is required, consultation between Mental Health Clinician and the Medical Director will occur as soon as reasonably possible but no later than 72 hours to review the appropriateness of the action.

5. When an offender or offenders are creating a disturbance, the officer on duty will attempt to handle the problem by ordering the offender(s) to cease the disturbance. If the offender(s) refuses and continues the disruptive behavior, the officer will then call his supervisor.

6. When the supervisor arrives, he will take charge of the situation and then order the offender(s) to cease the disturbance. If the offender(s) refuses the order, he will then order the offender(s) to come to the bars so that he may be properly restrained and removed from his cell to be placed in administrative segregation or the appropriate area. This procedure also applies to offenders already housed in administrative segregation.

Penitentiary Directive No. 09.002
June 27, 2011
Page 10 of 18

7. If these efforts fail to control the situation and the offender(s) continues the disruptive behavior which, in the opinion of the highest ranking security supervisor on duty in the immediate area where the incident is occurring, may lead to loss of life, serious injury to person(s), extensive destruction of property, or a serious situation which may jeopardize the safety, security and good order of the facility, the supervisor may then use only the minimum amount chemical agent necessary to subdue the offender(s).

8. If the highest ranking security supervisor on duty in the immediate area where the incident is occurring determines that chemical agent will be used, he will personally apply the chemical agent. Only the minimum amount necessary to control the situation will be used. It is the supervisor's responsibility to ensure that the chemical agent is not used as a form of punishment or on an offender(s) who is physically incapable of responding to commands being given to him.

9. The offender(s) will then be given orders to come to the bars to be handcuffed. If the offender complies, appropriate restraints will be applied; he will be removed from the cell and offered a change of clothing and to shower. The offender(s) and affected staff will then be examined and treated, per established protocols, by an EMT or other qualified health care provider.

10. In the event that the use of chemical agent has no effect in controlling the situation as described above, the Control Center will be notified to assemble a cell entry team to subdue the offender(s).

11. The cell entry team leader will verbally inform the offender that the EMD will be used to subdue him.

12. The cell entry team leader or another trained officer designated by the team leader will arc/test the EMD in the offender's presence to show that electricity is being used. The team leader will again give the offender the opportunity to come to the bars to be restrained.

13. If the offender still refuses to come to the bars to be restrained, the team leader in charge of the situation will utilize the EMD and riot helmet, or designate another qualified officer to do the same. The on/off switch will be placed in the "on" position, and the cell entry team will enter the cell.

14. After the team has entered the cell, the officer utilizing the EMD and riot helmet will approach the offender and place the shield upon him. <u>Always use the minimum force necessary to control the situation</u>.

Penitentiary Directive No. 09.002
June 27, 2011
Page 11 of 18

15. After the burst of electricity from the EMD has been administered, maintain cover with the shield. Have the offender move or physically move the offender to be restrained. If the offender physically resists, another burst of electricity may be applied with the electronic device. While the offender is being restrained, maintain cover with the shield. This procedure may be repeated only if necessary. The offender(s) will then be examined and treated, per established protocols, by an EMT or other qualified health care provider. Only minimum force will be used.

16. The only person authorized to use chemical agent or to order the cell to be entered to subdue an offender(s) is the highest ranking security supervisor on duty in the immediate area where the incident is occurring. Under no circumstances will an officer or officers use chemical agents, intermediate/impact weapons, or less lethal munitions and devices to subdue an offender(s) without the supervisor being present.

17. ASP

    a. On approval by the Warden, security supervisors of segregated areas shall be authorized to use the ASP (expandable tactical baton) in the performance of assigned duties. The ASP shall be stored in a proper storage compartment until such time as use is required. The ASP shall be inventoried.

    b. Trip officers shall be authorized to carry the ASP while escorting offenders outside the institution. The ASP shall be signed out from the Armory as part of regular security equipment issue.

    c. Only those staff who have been properly trained and certified shall be permitted to use the ASP.

18. After Use

    1. When chemical agents, intermediate/impact weapons or less lethal munitions and devices have been used

        a. Affected individuals will be permitted to wash their face, eyes or other exposed skin areas, as soon as possible after the situation has been brought under control, and the individual will be examined by qualified medical personnel.

        b. Staff may be referred to medical personnel as appropriate based on the circumstances.

2.    All instances in which chemical agents, intermediate/impact weapons or less lethal munitions or devices are used shall be reported in accordance with Section F.

D.    USE OF ELECTRONIC MUSCULAR DISRUPTION DEVICES (EMD's)

1.    For the purpose of this Section, EMD's shall include only the electronic capture shield and electronic restraint belt system. (Refer to Department Regulation <u>No. C-02-006A</u> "Use of Taser®" for specific procedures regarding use of the Taser®.)

The use of the electronic capture shield is authorized for use at LSP as described in Section C, 10-16.

2.    EMD's <u>shall not</u>:

a.    Be used as punishment under any circumstances;

b.    Be used continuously and unjustifiably used against an offender;

c.    Be used on those offenders who are incapable of responding to the commands and orders being given to them by the staff (e.g. during epileptic seizures, etc.)

d.    Be used against any individual known to have been exposed or subjected to chemical agents containing flammable substances or any other product(s) using a potentially flammable propellant until a minimum of five minutes has passed allowing for evaporation of the propellant or unless the individual has completed the de-contamination process required after such exposure;

e.    Be used around known sources of flammable gases, liquids or solids;

f.    Whenever possible under prevailing circumstances, be used against offenders assigned to an area designated as a Mental Health Treatment Unit until a qualified medical or mental health worker is present and has attempted to control the situation unless it is necessary to prevent loss of life, serious injury to person(s) or extensive property damage.

3.    EMD's <u>may be</u> used against an offender or a group of offenders only in the following circumstances:

a.    To quell a riot and/or prevent loss of life, serious injury to person(s) and/or extensive destruction of property;

Penitentiary Directive No. 09.002
June 27, 2011
Page 13 of 18

    b.    To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution; or

    c.    To regain control of the institution or part of it.

4.    The use of EMD's is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

5.    Electronic Capture Shield

The electronic capture shield shall not be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination to use the electronic capture shield under these circumstances, or against an individual offender, shall be made by the highest ranking supervisor on duty in the area where the incident is occurring.

6.    Electronic Restraint Belt

    a.    Use of the electronic restraint belt shall be made by a designated supervisor and may be used in accordance with Penitentiary Directive No. 09.017, Transportation of Offenders. Such approval shall be obtained in advance, if possible.

        1)    When transporting or moving an offender within or outside of the institution in accordance with institutional procedures;

        2)    When transporting an offender whose medical condition is not conducive to full use of restraints;

        3)    When the past history and/or present behavior of the offender creates the possibility of bodily harm to any person, property damage or escape;

        4)    During court appearances when the Court issues an order that the other restraints be removed (see Department Regulation No. C-03-003 "Escorted Absences" for additional information) or other such activities where the use of restraints that are not visible or prominently observable is preferred.

    b.    The Medical Director or his designee should be consulted to be medical clearance for electronic restraint belt use and the electronic restraint belt should never knowingly be used on the following offenders:

Penitentiary Directive No. 09.002
June 27, 2011
Page 14 of 18

    1)    Elderly offenders over 65 years of age;

    2)    Wheelchair bound;

    3)    Severely ill offenders:

        a)    Cardiac: Offenders with pacemakers or defibrillators, coronary artery disease or congestive heart failure;

        b)    Liver: Offenders with cirrhosis and swelling of the legs or abdomen;

        c)    Kidney: Offenders on dialysis;

        d)    Stroke: Offenders that have trouble ambulating and therefore, use a cane or walker;

        e)    HIV: Offenders with a CD4 count of 50 or less;

        f)    Lung: Offenders with chronic obstructive pulmonary disease (COPD) or asthma bad enough to require more than one inhaler for treatment;

        g)    Cancer: Offenders with a current diagnosis of cancer.

d.    Except as stated in D, 6, b the electronic restraint belt may also be otherwise used at the discretion of the Warden or designee in accordance with the provisions of this Section.

e.    After Use

    1)    When EMD's have been used, affected offender(s) that suffered the electrical shock(s) shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

    2)    Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

    3)    All instances in which EMD's are used shall be reported in accordance with Section F of this regulation.

Penitentiary Directive No. 09.002
June 27, 2011
Page 15 of 18

E.    CANINE UNITS

Canine units shall be available to conduct building searches for offenders, to assist in escape procedures, to protect officers and others from serious bodily injury and death, to control crowds/riots, and to detect the presence of concealed contraband.

1.    The Warden or his designee shall be responsible for determining whether a situation justifies canine use and appropriate tactical measures that should be taken.

2.    Canines shall not be handled or given commands by anyone other than the assigned handler and/or his alternate.

3.    Unless otherwise approved by the Warden or his designee, canines shall be used in a leashed condition at all times.

4.    Canines may be used between the fences to provide perimeter security, when deemed necessary by the Warden or his designee. In the event that canines are utilized in providing perimeter security, one officer will provide roving security.

F.    REPORTING REQUIREMENTS

1.    All situations involving the use of force, including the discharge of any firearms, use of chemical agents and use of other security equipment (except for training purposes) must be documented to establish the identity of personnel and offenders involved and to describe the nature of the incident. In reporting instances, the standard Unusual Occurrence Report (UOR) shall be submitted to the Warden or designee as soon as possible after the incident, but no later than the end of tour of duty and shall be reviewed by the Warden or designee. Each time the electronic device is used the Armory will provide a Use of Electronic Device Documentation (Form 09.002-A) to be completed and forwarded to the appropriate areas.

NOTE: This review does not include incidents where mechanical restraints are applied to an offender in a calm, non-hostile situation where no other use of force was required, i.e., instructing an offender to allow an officer to apply handcuffs in order to be escorted to the cell block following a rule violation.

2.    The Warden or designee shall investigate all allegations of improper use of force and shall notify other authorities, as appropriate.

3.    Reporting in accordance with Department Regulation No. C-05-001 "Activity Reports/Unusual Occurrence Reports Operational Units" is required.

Penitentiary Directive No. 09.002
June 27, 2011
Page 16 of 18

4.  Administrative review of use of force incidents shall be conducted in accordance with the provisions of Department Regulation Nos. C-01-008 "Firearms and Weaponry Training" and C-05-001A "Serious Unusual Occurrence Review Panel."

G.  SECURITY EQUIPMENT – ACCESS, STORAGE AND INVENTORY

1.  The Armory is responsible for the maintenance and distribution of security equipment to all units, except canine units.  Only personnel designated by the Assistant Warden IV/Security shall have access to the Armory's security equipment storage area.  The Armory is responsible for the issuance of security equipment to authorized personnel for the performance of official duties, e.g., field officers, trip officers, roving security, tower officers, tactical unit personnel and chase team personnel.  Any other issuance of security equipment shall be at the discretion of the Warden or his designee.

2.  The Armory shall issue security equipment to authorized personnel such as shift supervisors and senior security officers of designated areas for use within the institution. Issuance of these items shall be documented by the issuing officers and signed by the receiving officer.

3.  The Armory shall maintain an inventory of all weapons, ammunition, chemical agents, and related security devices.  A written record will be maintained by Armory personnel regarding the issuance of any equipment in order to determine accountability and responsibility.  This report, which will be submitted to the Assistant Warden IV/Security at least monthly, will detail weapon conditions and list expiration dates of other equipment.

4.  At the beginning of each shift, Armory personnel will perform a test of the electronic devices.  The results of the tests will be documented.  If the electronic device fails the test, the Armory officer will notify the Communications Department to arrange for repairs.

5.  Cellblock units will store chemical agents in a locked cabinet. Chemical agents stored in the cabinet will be inventoried daily. At the beginning and the end of the shift, the Cellblock supervisor will log the weight of each can in the logbook.

6.  In the event that chemical agents are used, the name and number of the offender the agent was used on will also need to be logged in the logbook. The can will be weighed after the incident and the new weight noted in the logbook.

7.  It is the responsibility of each respective Assistant Warden to ensure that expired agents and empty cans are sent to the Armory for replacement.

Penitentiary Directive No. 09.002
June 27, 2011
Page 17 of 18

H.    LAW ENFORCEMENT/VISITOR WEAPONS

    1.    Unless authorized by the Warden, law enforcement officers and visitors are not permitted to carry their firearms inside the confines of the prison.

    2.    Perimeter gate security personnel will secure weapons in a secure storage locker and issue receipts to the owners of the weapons.

I.    ABUSE OF OFFENDERS, CORPORAL PUNISHMENT, OR USE OF UNNECESSARY OR EXCESSIVE FORCE

    1.    No employee shall abuse an offender for any reason.  Violations are actionable under the Corrections Services Employee Manual, Employee Rules and Disciplinary Procedures.

    2.    The force used shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

    3.    Necessary force may include the use of physical contact, chemical agents, intermediate/impact weapons and other less lethal weapons and munitions, mechanical restraints, electric muscular disruption devices, and firearms.

    4.    The following uses of force are prohibited: corporal punishment, unnecessary force, and excessive force.

J.    TRAINING

    1.    All correctional officers and other appropriate employees shall be provided a copy of the current use of force policy and thoroughly trained pursuant to Department Regulation No. C-01-008 before being authorized to carry any weapon.  Authorized employees shall be instructed in accordance with the regulation, including policies and procedures, and shall be provided with necessary training and retraining at least annually.  Employees shall adhere to the principles and practices of the regulation during training sessions.

    2.    All Corrections Security Officers will be trained in approved methods of self-defense and the use of force continuum.

    3.    Only those authorized employees who have successfully completed specialized training and/or qualification in the operation and use of less lethal and/or lethal weapons may use such weapons.

Penitentiary Directive No. 09.002
June 27, 2011
Page 18 of 18

4.      All instructors authorized to train others in the use of firearms, use of chemical agents, and use of force are certified by a competent authority to conduct such training.   All chemical agent instructors must be trained in the treatment of individuals exposed to a chemical agent.

Burl Cain, CCE
Warden

Attachment:        DPS&C Weapons List

Form:              LSP-09.002-A        Use of Electronic Device Documentation

This policy supersedes Penitentiary Directive No. 09.002 dated February 22, 2008.

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: LSP-2012 -0150

TO:   GREGORY JEANLOUIS 121703          C JAG 1/R
         Offender's Name and Number            Living Quarters


               10/16/2011
            Date of Incident


X                     ACCEPTED:  This request comes to you from the Wardens Office.  A response will be
                      issued within 40 days of this date.

                      REJECTED:  Your request has been  rejected for the following reason(s):


         01/27/2012                                        Trish Foster
              Date                              Warden's Signature or Designee