LOUISIANA STATE PENITENTIARY

10/15/2012
(R)

ANGOLA, LOUISIANA

ARP NUMBER: LSP - 2012 - 3109

RE: GREGORY JEANLOUIS    121703

LOCATION:    (TU UPPER C)

I HEREBY ACKNOWLEDGE RECEIPT OF FORM ARP-1 REGARDING REQUEST FOR REMEDY
NUMBER LSP-2012-3109

RECEIVED BY: _____ *Gregory Jeanlouis*
                                *121703*
                (INMATE'S NAME & NUMBER)

DATE RECEIVED: _____ *October 17, 2012*

DELIVERED BY: _____

=======================================================================
INSTRUCTION TO DELIVERY OFFICER:

1.   Have the inmate sign this receipt.

2.   Delivery Officer signs the receipt and dates it.

3.   Give the inmate the White envelope.

4.   Return the reciept to LEGAL PROGRAMS DEPARTMENT.

**RECEIVED**

OCT 2 6 2012

LEGAL PROGRAMS DEPARTMENT

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

CASE NUMBER: LSP-2012 -3109

TO: <u>GREGORY JEANLOUIS  121703</u>　　　<u>TU U/C</u>
　　　Offender's Name and Number　　　　　Living Quarters

<u>6/14/2012</u>
Date of Incident

ACCEPTED:  This request comes to you from the Wardens Office.  A response will be issued within 40 days of this date.

X　　　REJECTED:  Your request has been  rejected for the following reason(s):
　　　　YOUR ARP IS BEING REJECTED AS IT PERTAINS TO DISCIPLINARY
MATTERS WHICH MAY NOT BE APPEALED THROUGH THE ARP SYSTEM.
DISCIPLINARY MATTERS MUST BE APPEALED THROUGH THE DISCIPLINARY
APPEALS PROCESS.   YOU MAY CONTACT THE OFFENDER COUNSEL IN YOUR
HOUSING AREA

<u>10/15/2012</u>　　　　　　　　　　　　　<u>Trish Foster</u>
Date　　　　　　　　　　　　　　Warden's Signature or Designee

2012-5109    1999
Ref.

# THIS IS A REQUEST FOR ADMINISTRATIVE REMEDY

GREGORY JEANLOUIS    #121703
Inmate's Name                 DOC#

JUNE 14, 2012 (THURSDAY)
Date of Incident / Complaint

RECEIVED
OCT 05 2012
Legal Programs Department

Place and Time of Incident / Complaint

Nature of Complaint

THIS COMPLAINT IS A SUMMA-RAIZE AND RESUBMIT OF THE INI-TIALLY SUBMITTED REQUEST FOR ADMINISTRATIVE REMEDY (ARP) OF SEPTEMBER 40, 2012 REJECT-ED ON SEPTEMBER 27, 2012 UNDER CASE NUMBER: LSP-2012-2972; RECEIVED ON SEPTEMBER 28, 2012

On Thursday, June 14, 2012, 3 disciplinary reports were written against the Complainant (refer to sometimes as "Jeanlouis"), alleging he violated disciplinary rules prohibiting cursing employees [RULE #3, DEFIANCE (2 COUNT)] and not obeying employees' direct

ARP-LSP-October 2, 2012                 Page 1 of 13

verbal orders [RULE #5, AGGRAVATED DIS-OBEDIENCE (3 COUNTS)(3 REPORTS)], when he was being escorted to the prison hospital by Lt. Cleveland Cannon, who was assigned to Camp C Patrol duties.

It is alleged that on that date, when Complainant was being escorted by Lt. Cannon for a hospital call-out, when he got to the patrol-van, he stated, "Fuck you Lt. You took me to the hospital yesterday in this hot mother fucker van." Lieutenant (Lt.) Cannon reported he gave the offender (Complainant) several orders to stop cursing and trying to cause a disturbing (Because other offenders were in the van), but Complainant continued cursing, so he (Lt. Cannon) escorted him to Administrative Segregation (Adm. Seg.).

It's further alleged that at approximately 9:30 Am, thirt (30) minutes later, while being temporarily held in Tiger-1 Right shower pending transfer to Adm. Seg., Complainant began yelling and cursing whereby Master sergeant Shuwanda Richardson, gave him several direct verbal orders to stop yelling and cursing. Complainant continued yelling

ARP-LSP-October, 2, 2012                    Page 2 of 13

and cursing. and stated to her, " Bitch you can suck my Dick." Lieutenant Cannon was notified of the incident, according to her reports. Master-sergeant Richardson on that date was assigned to Tiger(1 and 2) Unit.

Finally, it is also alleged that at that same time (9:30 AM) Major Daniel Davis gave Complainant several direct verbal orders to cease the disturbance, but he refused all order. Major Davis then exit the tier (cells on one side of a hallway) and retrieved a can of Sabre Red chemical agent and subsequently sprayed a one burst of Sabre Red into the shower area. Complaintant complied with Davis order and given a clean jumpsuit, after being allowed to shower. Complainant was seen by medical personnel and placed in Adm. Seg. Colonel Vittorio was notified.

At the disciplinary hearing, Complainant pleaded not guilty, to all allegations. After finding him guilty, the Disciplinary Board ("D.B.")( Chairman Tim Delaney, who Assistant Warden over Camp C ) finding him guilty, he was sentenced to a

ARP-LSP-October 2, 2012                    Page 3 of 13

Custody/quarter change from Jaguar-1-Right (maximum security/extended lockdown) to Camp J Management Program (Disciplinary Camp), and loss of 8 weeks canteen and yard privileges, without written reasons for the sentence.

Three days later, on Thursday, June 28, 2012 the date the U.S. Supreme Court ruled that a provision of President Obama's landmark health-care law [The Affordable Care Act] concerning those in jail is constitutional, see National Federation of Independent Business v Sebelius 11-393 (6/28/12), Complainant (Jeanlouis) who is coping with health-related disabilities including mental illness, was exigently transferred to Camp J (disciplinary camp). A place where in the past, he was subjected to neglect and abuse and placed a greater health-risk by excessive heat at Camp J. But see, The Advocate "Group petition for access at Angola Thursday, August 21, 2012, pg 1A ("The Advocacy Center filed on August 17, 2012 a suit in Baton Rouge Federal court against prison officials at Angola noting that some death-row inmates have health-related disabilities including mental illness, heart problems, lung disease and diabetes and reported that death-row temperature

ARP-LSP-October 8, 2012                    Page 4 of 13

have exceeded 100 degrees"). On June 3, 2010, Complainant was the victim of a hate-crime at the hands of prison guards. See Disciplinary Board Appeal # LSP-2010-0394-W.

Although isolation of prisoners with mental illness is not unconstitutional as a rule, it is subject to Eight Amendment limitations. Helling v McKinney 509 US 25, 34-35 (1993). There are certain conditions under which isolating prisoner with mental illness can cross constitutional bounds. See e.g. Hutto v Finney, 437 US 678, 685-87 (1978)

In the instant case, Complainant (Jeanlouis) has an interest in avoiding physical and mental deterioration. See e.g. Davenport v DeRoberts, 844 F 2d 1310, 1313 (7th Cir 1988) ("The record shows...that isolating a human being from other human being years after years or even month after month can cause substantial psychological damage, even if the isolation is not total"). Camp J conditions are so bad that prisoners-like [Complainant] with mental-illness, infectious disease, or disabilities, present special issues, that serious physical or psychological deterioration is inevitable that it constitutes

AHP-LSP-October 2, 2012                    Page 5 of 13

"Cruel and unusual punishment" proscribed by the Eight Amendment, Ante at 4-5. Advance stage 3 Hepatitis C gets worse and become cirrhosis (scared liver), stage 4, which is an irreversible stage that leads to death. See The Advocate, "CDC to baby boomers: Get tested for hepatitis C", Saturday, May 18, 2012, pg 3A ("On May 18, 2012 the Center for Disease Control and Prevention Center proposed for the first time that all baby boomers anyone born from 1945 to 1965 get tested for the liver-destroying virus, hepatitis C")

Accordingly, because two or more persons (under color of law) between June 7 and 28, 2012 conspired to injure, oppress, threaten and (among other things) intimidate Complainant [Jeanlouis] in his free exercise of the right secured to him by the Constitution of the United States and the state of Louisiana, to seek adequate medical care on June 14, 2012, Ante at 1-4, as he did the day before, for his serious medical needs, compare 18 USC § 241 (conspiracy against rights) and § 242 (deprivation of right under color of law). On July 3, 2012, the Complainant, Gregory Jeanlouis, filed an "Disciplinary Appeal" to the Warden Office from the 3 disciplinary re-

ARP-LSP-October 2, 2012                    Page 6 of 13

ports that were written against him on June 14, 2012, the date the conspiracy scheme climax, at an assault and battery being committed against him by prison guards. Now see January 12, 2012 ARP request (date of incident on Oct. 16, 2011 - Jan. 8, 2012) which was accepted in the ARP request process on January 27, 2012 and given ARP number LSP-2012-0150 (First Step Response Form prepared by Assistant Warden Tim Delaney and Approved by Assistant Warden Joe Lamartinere and signed by Deputy Warden Darrel Vannoy on February 14, 2012), denied by Headquarters on ~~October 24, 201~~ April 20, 2012.

And for similar reasons, initially filed an ARP request on this matter on September 10, 2012.

To be held liable for failing to protect an inmate, an prison officials must not only know about a substantial risk of serious harm but also fail to respond reasonably. Deliberate indifference is the failure to take reasonable protective measures in response to an known risk of assault. See e.g. Farmer v Brennan, 511 US 825 (1994)(a case that considered the meaning of deliberate indifference with reference to a

ARP-LSP-October 2, 2012                    Page 7 of 13

prison's duty to protect its inmates from violence at the hands of other inmates")

Courts also use the deliberate in-difference standard in claims against supervisors for inadequate supervision and control of subordinate and against by-standing officers witnessing an assault. See e.g. <u>Blyden v Mancusi</u>, 186 F 3d 252, 264 (2d Cir 1999)

In the present case, despite prison officials requisite knowledge of Lt. Cannon exposing Complainant (and other inmates) to a substantial risk of serious harm, but also creating an escape hazard, by leaving unattended inmates assigned to maximum security (extended lockdown) -- out of his sight -- sitting in a vehicle (patrol van) with the doors open because of the hot weather and the music from the radio playing, while he (Cannon) was in the process of violating written institutional procedure, of waiting (some 200 feet away) for inmates assigned to Tiger Working Cellblock to escort to the prison hospital, in the same patrol van as inmates assigned to maximum security/extended lockdown (Jaguar Unit). The prison officials failed to protect the Complainant (Jeanlouis) from the sub-

ARP-LSP-October 2, 2012                     Page 8 of 13

sequent malicious and sadistical actions of their subordinates, Lt. Cannon, Master-sergeant Shawanda Richardson, and her-co-worker Sergeant "Unknown Woods.

Only minutes of being placed on Tiger 1-Right shower, Assistant Wardens Tim Delaney, Joe Lamartinere and Colonel Ray Vittorio made rounds on Tiger 1 Right tier. Immediately, Complainant communicated to A.W. Tim Delaney, the ~~unprovod unprovoke~~ (provoked) actions of Lt Cannon and his ~~humili~~ humiliating him in the presence of other inmates, while fully-restrained. He also communicated to Delaney the importance of the hospital callout and more likely than not, he (Jeanlouis) was scheduled to meet with an outside specialist for one of his many health-related disabilities. After remaining in the [hot] van for approx 15 minutes waiting on Lt. Cannon, complainant stepped out the patrol van to lessen thee pain in his right leg and lower-back. On the day before complainant met with Dr. Lee, the chiropractor, for his weekly physical ~~therepy~~. Upon seeing the ~~complainto~~ Complainant out the ~~fan~~ van, Lt. Cannon became belligerent towards

ARP-LSP- October 2, 2012                    Page 9 of 13

him. Not wanting to become disrespectful towards Lt. Cannon, Complainant communicated his desire to return to his assigned housing area, thus requested to refuse the hospital callout. Upon walking towards Tiger Unit, where Lt Cannon was standing, -- in the presence of other inmates -- he grabbed complainant by the waist-chain and bodily threw and propelled him into the Adm Seg building so that his face and head were caused to hit upon the side of the building.

Thereafter, while still placed in Tiger 1 Right shower, after being threaten by Mastersergeant Richardson to have "those people gas him down." Lt Cannon, on the pixel pretext of bring him to the hospital callout, Lt Cannon approached the bars and sprayed a can of Sabre Red chemical agent directly in the face and eye of complainant. Thus, causing him -- while fully-restrained -- trip over the build-in platform in the shower so that his head and back was caused to hit the floor of the shower. Consequently, causing him (complainant) to re-aggravate an already injured back and suffer head-aches and burning sensation in his eyes and skin caused by being maced.

ARP-LSP-October 2, 2012                     Page 10 of 13

In their attempt to eliminate this knowledge of this known excessive risk to Complainant's health and safety, the prison officials conspired and injured public record, i.e Disciplinary Report, by having Lt. Cannon's supervisor, Major Daniel Davis falsify a disciplinary report against him as to cause the type-written report reflect that he (Davis), instead of Lt. Cannon, sprayed the can of chemical agent into the shower area. Because according to Section F of Pent, Directive No. 09.002 ( C. USE OF CHEMICAL AGENTS, INTERMEDIATE / IMPACT WEAPONS, EMD's AND OTHER LESS LETHAL WEAPONS ] eff. June 27, 2011, Lt. Cannon was not authorized (have the authority) to use chemical agent against any inmate, without his supervisor present. present,

Colonel Roy Vittorio's resu recusal sua sponte as Chairman at the Disciplinary Hearing on June 18, 2012 provides actual knowledge (of prison officials) of the substantial risk to complainant's safety even if they did not know that Lt Cannon was going to attack him. See e.g. Johnson v Johnson, 385 F 3d 503, 524 (5th Cir 2004); Farmer v Brennan, 511 US at 842.

ERP-LSP-October 2, 2012                    Page 11 of 13

Looking at hindsight, it is reasonable to conclude that this conspiracy began at about the time the prison official mailed to the courts, complaninanti's "Motion For Suspension of Briefing and Order of Contempt of Court and Sanction against the Department (including Trish Foster)" <u>on June 6, 2012</u> to the 19th Judicial District Court at Baton Rouge in case a civil case no C601,099-25 (filed April 21, 2011); And on that (same) date, an "Application For Re-hearing from May 18, 2012 Action of the Louisiana Supreme Court" in criminal docket numbers 11-KH-2734 2028, to the LSC. See e.g. "<u>Lockdown review board sheet</u>" signed by Colonel Ray Vottorio and Classification Officer Platter Gooden on June 5, 2012, which was reserved by complainant on June 7.

<u>In the excessive force context</u> society's expectations are difference, when a prison officials maliciously and sadistically use force to cause harm, <u>Ante at 9-10</u>, contemporary standard of decency always are violated. <u>See Hudson v McMillian, 503 US 1, 9 (1992)</u>

The U.S. Constitution (and many states (including Louisiana) have statutes, e.g LSA-RS 15:820-831 et seq) requires prison officials

NRP-LSP October 2, 2012                    Page 12 of 13

to provide all state and Federal prisoners and pretrial detainess with adequate medical care. Since his placement at Camp J on June 20, 2012, complainant have not be brought to his weekly physical therapy with Dr Lee, the chiroplator, for his leg and lower-back injuries. Sustained on June 3, 2010 here at Camp J.

On September 11, 2012, complainant was granted a favorable decision in his Disciplinary Board Appeal (#LSP-2012-0349-W), however, on September 14 he was placed on backlog, which is tantamount to being denied the DB Appeal.

This complaint is against any and every everyone who had requisite knowledge of this risk to complainant's health and safety and conspired to injure him in this matter.

Relief Sought

Complainant request any releaf he is entitled by law including but not limited to monetary reward.

October 2, 2012
DATE

Submitted by

GREGORY JEANLOUIS
Camp J, Gator 1 R3
ANGOLA LA 70712

ARP-LSP-October 2, 2012                    Page 13 of